RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0417P (6th Cir.)
File Name: 02a0417p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NATHANIEL CRAIGMILES;
TOMMY WILSON; CRAIGMILES
WILSON CASKET SUPPLY;
ANGELA BRENT; JERRY
HARWOOD; NAENIA
ENTERPRISES, LLC,
       *Plaintiffs-Appellees,*

       *v.*

ARTHUR GILES; LARRY
MERIWETHER, SR.; FRED S.
WHEELER; LORI KEEN;
EDWARD LARSON; CHARLES
B. MANES, JR.; KAREN
HOUSE; MACK WOOD; PAUL
G. SUMMERS; JOHN HOPKINS,
each in their official
capacities as State Officials,
       *Defendants-Appellants.*

No. 00-6281

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 99-00304—R. Allan Edgar, Chief District Judge.

Argued: April 24, 2002

Decided and Filed:  December 6, 2002

Before:  KRUPANSKY and BOGGS, Circuit Judges; and
LAWSON, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Steven A. Hart, OFFICE OF THE ATTORNEY
GENERAL, FINANCIAL DIVISION, Nashville, Tennessee,
for Appellants.  William H. Mellor, INSTITUTE FOR
JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:**
Steven A. Hart, Janet M. Kleinfelter, OFFICE OF THE
ATTORNEY GENERAL, FINANCIAL DIVISION,
Nashville, Tennessee, for Appellants.  William H. Mellor,
Matthew Berry, INSTITUTE FOR JUSTICE, Washington,
D.C., Harold L. North, Jr., SCHUMAKER & THOMPSON,
Chattanooga, Tennessee, Steven M. Simpson, SHEARMAN
& STERLING, Washington, D.C., for Appellees.  T. Scott
Gilligan, STATMAN, HARRIS, SIEGEL & EYRICH,
Cincinnati, Ohio, John C. Eastman, CHAPMAN
UNIVERSITY SCHOOL OF LAW, Orange, California, for
Amici Curiae.

_____

**OPINION**

_____

BOGGS, Circuit Judge.  Nathaniel Craigmiles and several
other plaintiffs challenge a provision of the Tennessee Funeral
Directors and Embalmers Act (FDEA) that forbids anyone
from selling caskets without being licensed by the state as a
"funeral director."  Licensing requires an applicant to undergo
two years of education and training, very little of which,
Craigmiles argues, pertains to casket design or selection.  The

_____

[*]  The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

functioning market on the people of Tennessee.  Instead, we
invalidate only the General Assembly's naked attempt to raise
a fortress protecting the monopoly rents that funeral directors
extract from consumers.  This measure to privilege certain
businessmen over others at the expense of consumers is not
animated by a legitimate governmental purpose and cannot
survive even rational basis review.

The plaintiffs also argue that the FDEA's application to
funeral merchandise retailers is unconstitutional under the
Privileges and Immunities Clause of the Fourteenth
Amendment.  Because the plaintiffs' Equal Protection and
Due Process arguments are sufficient to support the district
court's injunction, we do not reach this argument.  The
Privileges and Immunities Clause has been largely dormant
since the *Slaughter-House Cases*, 83 U.S. (16 Wall) 36
(1872), restricted its coverage to "very limited rights of
national citizenship" and held that clause did not protect an
individual's right to pursue an economic livelihood against
his own state.  There has been some recent speculation that
the Privileges and Immunities Clause should have a broader
meaning.  *See Saenz v. Roe*, 526 U.S. 489, 521-23 (1999)
(Thomas, joined by Rehnquist, dissenting) (speculating that
the development of the Privileges and Immunities Clause was
prematurely stifled by the *Slaughter-House Cases*).
Nevertheless, we need not break new ground today to hold
that the application of the FDEA to funeral merchandise
retailers is unconstitutional under the Fourteenth Amendment.

**III**

For all of the foregoing reasons, we AFFIRM the district
court's order enjoining the application of the FDEA to the
plaintiffs' businesses as they operated before the Board's
cease and desist order.

Finally, the state argues that the course of study required for licensure trains directors in the best ways to treat individuals who have suffered profound loss. Unlicensed casket retailers, without this psychological training, we are told, may aggravate the grief of the decedent's survivors who are shopping for a casket. However, even those who purchase from casket retailers will still need a licensed funeral director for arranging services and handling the body, at which time the survivors may still receive the benefit of the funeral director's psychological training. Moreover, survivors must deal with a panoply of vendors in order to make funeral arrangements, from churches to food vendors for a wake, none of whom is required to have this psychological training. This justification is very weak, indeed.

Finding no rational relationship to any of the articulated purposes of the state, we are left with the more obvious illegitimate purpose to which licensure provision is very well tailored. The licensure requirement imposes a significant barrier to competition in the casket market. By protecting licensed funeral directors from competition on caskets, the FDEA harms consumers in their pocketbooks. If consumer protection were the aim of the 1972 amendment, the General Assembly had several direct means of achieving that end. None of the justifications offered by the state satisfies the slight review required by rational basis review under the Due Process and Equal Protection clauses of the Fourteenth Amendment. As this court has said, "rational basis review, while deferential, is not toothless." *Peoples Rights*, 152 F.3d at 532 (citing *Mathews v. Lucas*, 427 U.S. 495, 510 (1976)).

Judicial invalidation of economic regulation under the Fourteenth Amendment has been rare in the modern era. *See West Coast Hotel v. Parrish*, 300 U.S. 379 (1937). Our decision today is not a return to *Lochner*, by which this court would elevate its economic theory over that of legislative bodies. *See Lochner v. New York*, 198 U.S. 45 (1905). No sophisticated economic analysis is required to see the pretextual nature of the state's proffered explanations for the 1972 amendment. We are not imposing our view of a well-

district court held that the FDEA, insofar as it bars non-licensed funeral directors from the retail sale of caskets, violates both the Due Process and Equal Protection clauses of the Fourteenth Amendment. Recognizing that the limitation neither affected any fundamental right nor discriminated against any protected class, the district court nevertheless determined that the restriction lacked a rational basis and therefore did not pass even slight constitutional scrutiny. Tennessee appeals the district court order, arguing that the FDEA at least advances several legitimate governmental purposes. We consider the state's arguments below, and affirm the district court's judgment.

## I

The FDEA requires all those engaged in "funeral directing" to be licensed by the Board of Funeral Directors and Embalmers, established by the FDEA. *See* Tenn. Code Ann. § 62-5-201. When the licensing legislation was originally enacted in 1951, the definition of "funeral directing" did not include the sale of caskets and other funeral merchandise, but was limited to the arranging of funeral ceremonies, burial, cremation, and embalming. In 1972, the Tennessee General Assembly amended the definition of "funeral directing" to include the "making of arrangements to provide for funeral services and/or *the selling of funeral merchandise*, and/or the making of financial arrangements for the rendering of the services, and/or the sale of such merchandise." Tenn. Code Ann. § 62-5-101(a)(3)(A)(ii) (emphasis added).

The requirements for licensure as a funeral director are more than administrative. Applicants may choose one of two paths of study. They may complete *either* one year of course work at an accredited mortuary school *and* then a one-year apprenticeship with a licensed funeral director *or* a two-year apprenticeship. There is no specified curriculum for the apprenticeship, although the funeral director under whom the candidate is training must file a quarterly report with the Board regarding the apprentice's activity. After the

completion of either of the two-year tracks, the candidate must take and pass the Tennessee Funeral Arts Examination.

For the candidate on the mortuary school track, there is only one accredited school in Tennessee, Gupton College. To complete the required year at Gupton, the candidate must take eight credit hours in embalming, three in "restorative art," and twenty-one in "funeral service." Although there was testimony at trial that portions of sixteen of the twenty-one hours in "funeral service" classes pertain to caskets and urns, students testified that casket and urn issues constituted no more than five percent of the Gupton curriculum. Only 37 of the 250 questions on the Tennessee Funeral Arts Exam concern funeral merchandising, including various casket options, FTC regulations regarding the sale of funeral merchandise, and merchandise display.

Craigmiles and his fellow plaintiffs operate two independent casket stores: "Wilson-Craigmiles Casket Supply" in Chattanooga and "The Casket Store" in Knoxville. The stores offer caskets, urns, gravemarkers, monuments, flower holders, and other merchandise items. The stores engage in no embalming or arranging of funeral services, cremations, or burials. Neither of the stores has sought to sell caskets "pre-need," and each, at least so far, sells caskets only after the death of the intended occupant.

The Board issued a cease and desist order to both businesses, which barred them from continuing to sell caskets and other funeral merchandise. In the orders, the Board declared that the businesses were engaged in "funeral directing" and employed no licensed "funeral directors," thus violating the FDEA. Both businesses ceased operations on issuance of the orders.

Craigmiles and the other proprietors affected by the cease and desist orders filed this action in the United States District Court for the Eastern District of Tennessee. Bringing the action under 42 U.S.C. § 1983, Craigmiles alleged that the FDEA, insofar as it restricted the sale of caskets, urns, and other funeral merchandise to licensed funeral directors,

homes is to have third-party competitors on individual items like caskets. Licensure is a barrier to that solution. More relevantly, casket retailers cannot merge goods and services, and make consumers pay for items they do not want, because they *only* sell caskets and other smaller items, not funeral arranging and embalming services. Applying the whole FDEA in order to cover casket retailers by the FTC funeral rule is both inapposite and counterproductive.

Third, even if the FTC "funeral rule" were not to apply of its own force, the legislature could have directly required casket retailers to comply with the FTC funeral rule without imposing the licensure requirements.

The state also contends that the FDEA was designed to protect consumers with regard to pre-need sales agreements, under which people buy funeral goods and services before their death. The Act placed several restrictions on such pre-need transactions, such as that pre-paid funds be held in trust accounts until the death of the beneficiary. *See* Tenn. Code Ann. §62-5-401. Of course, casket retailers could also sell caskets pre-need, and if they were not covered by the FDEA generally, Section 401 would also not be immediately applicable.[1] But any lack of coverage is a remediable design flaw of the legislation and does not justify the joinder of the pre-need trust and licensure requirements. Moreover, the plaintiffs here do not engage in pre-need sales. The injunction prevents application of the FDEA to their business as it had been conducted at the time of the cease and desist order. As we read the district court's order, the Board would not be enjoined from applying the Act to the plaintiffs if they began to engage in pre-need sales.

---

[1] The risks would not be so profound when it came to purchasing a casket in advance. While a consumer might not want to keep a casket in his garage until he needed it, the consumer would undoubtedly have a lien on the casket purchased, a luxury that consumers purchasing embalming and arranging services in advance would not enjoy.

(zoning regulations regarding the number of residents that were generally applicable). *Id.* at 439.

Also in terms of consumer protection, the state argues that the Act's coverage of casket retailers provides for application of the Federal Trade Commission's "funeral rule" to casket retailers. The FTC "funeral rule" requires "funeral providers" to provide itemized price lists for parts of the funeral services and merchandise, like the burial container, use of the funeral home facilities, use of funeral home transportation, and the casket. 16 C.F.R. § 453. The Rule was designed to prevent package pricing by funeral homes, thereby forcing consumers to buy services that they did not want or need. By requiring itemization, the FTC intended to "lower existing barriers to price competition in the funeral market and to facilitate informed consumer choice." 47 Fed. Reg. 42260, 42260 (Sept. 24, 1982). The state contends that the Rule only applies to "funeral providers" and would exclude casket retailers from its coverage. According to this argument, the FDEA, by covering casket retailers and requiring compliance with the FTC funeral rule, ensures that casket retailers will also comply with this "important" rule protecting funeral consumers.

There are at least three problems with this FTC argument. First, the state's statement of the coverage of the FTC funeral rule ignores the definition of "funeral providers" in the FTC rule itself. The FTC defines a "funeral provider" as "any person, partnership, or corporation that sells or offers to sell *funeral goods* or funeral service to the public." 16 C.F.R. § 453.1(i) (emphasis added). The definition appears, on its face, to apply to casket retailers, and we cannot find an agency or judicial decision limiting construction elsewhere. Therefore, to the extent that the FTC rule is important for consumer protection, even with regard to casket retailers, the Rule would apply of its own force, without the FDEA.

Second, the FTC funeral rule would seem to have little if any relevance for casket retailers. Perhaps the best antidote for the evil of funeral goods and services bundling by funeral

violates the Due Process, Equal Protection, and Privileges and Immunities clauses of the Fourteenth Amendment. Craigmiles requested that the court enjoin the enforcement of the FDEA against businesses engaging only in the retailing of funeral merchandise.

The district court held that the application of the FDEA to the plaintiffs' businesses violates their due process and equal protection rights, but rejected the plaintiffs' Privileges and Immunities Clause argument. Accordingly, the district court enjoined the Board from enforcing the FDEA against the plaintiffs' businesses, with respect to the way they operated before the Board's cease and desist order. The district court did not, however, enjoin the operation of the entire Act, its application to other parties, or even to the plaintiffs if their business activities changed. *See Craigmiles v. Giles*, 110 F. Supp. 2d 658, 667 (E.D. Tenn. 2000).

After the issuance of the injunction, the plaintiffs resumed operations. The State of Tennessee now appeals and argues that the district court's injunction should be dissolved.

## II

The Supreme Court has established a tripartite rubric for analyzing challenges under the Equal Protection and Due Process clauses. When a statute regulates certain "fundamental rights" (*e.g.* voting or abortion) or distinguishes between people on the basis of certain "suspect characteristics" (*e.g.* race or national origin), the statute is subject to "strict scrutiny." *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978). To survive strict scrutiny, the regulation must serve a compelling state purpose and be narrowly tailored to achieving that purpose. *Ibid*. The Supreme Court has identified other classifications, such as gender and illegitimacy, which are less "suspect," and are therefore subject only to intermediate scrutiny, under which the regulation need only serve an "important" state interest and the means employed need only be "substantially related" to that interest. *See J.E.B. v. Alabama*, 511 U.S. 127, 136

(1994); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982).

All other regulations are subject to "rational basis" review, requiring only that the regulation bear some rational relation to a legitimate state interest. *Romer v. Evans*, 517 U.S. 620, 632 (1996). Even foolish and misdirected provisions are generally valid if subject only to rational basis review. As we have said, a statute is subject to a "strong presumption of validity" under rational basis review, and we will uphold it "if there is any reasonably conceivable state of facts that could provide a rational basis." *Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001). *See also Heller v. Doe*, 509 U.S. 312, 319 (1993). Those seeking to invalidate a statute using rational basis review must "negative every conceivable basis that might support it." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973). Our standards for accepting a justification for the regulatory scheme are far from daunting. A proffered explanation for the statute need not be supported by an exquisite evidentiary record; rather we will be satisfied with the government's "rational speculation" linking the regulation to a legitimate purpose, even "unsupported by evidence or empirical data." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Under rational basis review, it is "'constitutionally irrelevant [what] reasoning in fact underlay the legislative decision.'" *Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603 (1960)).

All of the parties concede that rational basis review is the proper standard for evaluating the FDEA. While feared by many, morticians and casket retailers have not achieved the protected status that requires a higher level of scrutiny under our Equal Protection jurisprudence. Although the licensing requirement has disrupted the plaintiffs' businesses, the regulations do not affect any right now considered fundamental and thus requiring more significant justification. Nevertheless, the district court determined that the 1972 amendment to the FDEA, to the extent that it required licensure as funeral directors for casket retailers, was not even

standards for casket retailers, or even make Section 317 directly applicable to casket retailers also, without requiring the licensure that is the subject of complaint.

These arguments about how the legislature could have developed a more carefully calibrated act foreshadow another argument for the Act's constitutionality. The overinclusiveness of the statute may simply be a byproduct of legislative efficiency. The state could have passed a more nuanced piece of legislation to subject casket retailers to the consumer protection features of the FDEA without imposing licensure requirements that have very little relation to casket retailing. Rational basis review, however, does not require the best or most finely honed legislation to be passed. The state could argue that the Act as a whole applied to the plaintiffs actually provides some legitimate protection for consumers from casket retailers. The history of the legislation, however, reveals a different story than one of mere oversight in drafting. By specifically amending the Act in 1972 to cover the sale of funeral merchandise, the legislature specifically brought casket retailers under the coverage of the licensing scheme, and could have applied Section 317 directly to retailers. This specific action of requiring licensure, which had the byproduct of making Section 317 applicable, appears directed at protecting licensed funeral directors from retail price competition.

The Supreme Court, employing rational basis review, has been suspicious of a legislature's circuitous path to legitimate ends when a direct path is available. In *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), the Supreme Court invalidated under rational basis review a local zoning ordinance barring the construction of a home for the mentally disabled in a certain neighborhood. The Court successively discounted the city's offered justifications, noting in several cases that if the city were really concerned about the ills that they claimed (overcrowded dwellings), they could have passed better-tailored regulations without the suspicious side-effect of keeping the mentally disabled out of neighborhoods

Tennessee also argues that the funeral directors' education and training would increase their ability to advise consumers on which casket would be most protective in particular cases. However, the availability of casket retailers will not prevent funeral directors from continuing to dispense this advice. Only the price of the caskets that the funeral directors may recommend might be affected.

The district court determined that there was no evidence of any public safety risk from a leaky casket, or a mere "box" for human remains. *Craigmiles*, 110 F. Supp. 2d at 662-63. The district court might be correct, but we need not take a position in this debate. Even if casket selection has an effect on public health and safety, restricting the retailing of caskets to licensed funeral directors bears no rational relationship to managing that effect.

The district court also held that the licensing requirement was not rationally related to the state's interest in consumer protection. The State of Tennessee argues that the FDEA closely regulates the conduct of funeral directors, preventing them from making fraudulent misrepresentations, making solicitations after death or when death is imminent, or selling a previously used casket. *See* Tenn. Code Ann. § 62-5-317(a)(2). The penalties for violation of these provisions include the suspension or termination of the funeral director's license. The state contends that if casket retailers need not be funeral directors, then the retailers would not be subject to these regulations and consumers would be at risk.

There are a few problems with this argument. First, some of the regulations in Section 317(b) of the Act are generally applicable to retailers already, enforced by civil and criminal sanctions. For example, it is not as if casket retailers would be free to "engage in misrepresentation or fraud" if not covered by the FDEA. *See* Tenn. Code Ann. 62-5-317(b)(1). Second, to the extent casket retailers would not be covered by the conduct requirements, it would a symptom of the structure of the Act, not the unconstitutionality of requiring licensure for casket retailers. The legislature could develop similar

rationally related to a legitimate governmental purpose. According to the district court, the amendment was designed only for the economic protection of funeral home operators.

Courts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose. *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) ("Thus, where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected."). *See also H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 537-38 (1949); *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983) (distinguishing between legitimate state purposes and "providing a benefit to special interests"). At trial, the plaintiffs adduced evidence that funeral home operators sell caskets at prices substantially over total costs. The FDEA has the effect, at least, of preventing individuals who are not licensed funeral directors from selling caskets, potentially at a lower price. In this case, the district court found that funeral home operators generally mark up the price of caskets 250 to 600 percent, whereas casket retailers sell caskets at much smaller margins. *See Craigmiles*, 110 F. Supp. 2d at 664.

Of course, nothing in the FDEA prevents casket retailers from becoming licensed funeral directors. However, dedicating two years and thousands of dollars to the education and training required for licensure is undoubtedly a significant barrier to entering the Tennessee casket market. The question before this court is whether requiring those who sell funeral merchandise to be licensed funeral directors bears a rational relationship to any legitimate purpose other than protecting the economic interests of licensed funeral directors.

The weakness of Tennessee's proffered explanations indicates that the 1972 amendment adding the retail sale of funeral merchandise to the definition of funeral directing was nothing more than an attempt to prevent economic competition. Indeed, Tennessee's justifications for the 1972 amendment come close to striking us with "the force of a

five-week-old, unrefrigerated dead fish," *United States v. Searan*, 259 F.3d 434, 447 (6th Cir. 2001); *United States v. Perry*, 908 F.2d 56, 58 (6th Cir.1990), a level of pungence almost required to invalidate a statute under rational basis review. Only a handful of provisions have been invalidated for failing rational basis review. *See Romer v. Evans*, 517 U.S. 620 (1996); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985); *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998). We hold that this case should be among this handful.

Tennessee claims that subjecting funeral merchandise retailers to the licensure requirement promotes both public health and safety and consumer protection. With regard to public health and safety, the state contends that the education and training required for licensure insures that those who handle dead bodies may dispose of them safely and prevent the spread of communicable diseases. The district court, however, was unable to find any way in which the application of the FDEA to the plaintiffs promoted public health or safety. The plaintiffs, of course, would not handle the bodies, much less engage in any embalming services. As the plaintiffs' businesses operated at the time of the Board's order, consumers after a relative's death would simply purchase a casket from the plaintiffs. The plaintiffs would then deliver the purchased casket to the funeral home that would be handling the body. The district court did not enjoin the enforcement of the FDEA to anything other than the retailing of funeral merchandise.

The *quality* of the caskets used potentially threatens public health. If the contents of a casket were to leak, visitors to funeral services and perhaps even ground water could be exposed to bacteria emanating from the corpse. At trial, funeral directors testified that such leakage was of particular concern when the decedent died from a communicable disease, or when the body was not embalmed. Tennessee law, however, does not require that any particular type of casket, or any casket at all, be used at burial. It is perfectly legal in Tennessee for loved-ones to provide a homemade casket, for

friends to give (but not to sell) a casket for use in burial, or for a body to be buried in no container at all. This lack of regulation of body disposal is no different for those who have died from contagious diseases.

The General Assembly could have decided against direct regulation of corpse containers, choosing instead the placement of experts in the field to advise family members of the decedent in the selection of a casket. However, the requirements for licensure would not seem to make it more likely that the corpse would be placed in the "safest" possible casket. Neither the Board nor the General Assembly has established standards for casket selection to which licensed funeral directors are held accountable. There is no evidence in the record that licensed funeral directors were selling caskets that were systematically more protective than those sold by independent casket retailers. *See Craigmiles*, 110 F. Supp. 2d at 663. Indeed, the only difference between the caskets is that those sold by licensed funeral directors were systematically more expensive. *Ibid.*

In fact, restricting sales of caskets to licensed funeral directors would seem to have an adverse effect on the quality of caskets. The licensing requirement does not require consumers to choose more protective caskets or funeral directors to recommend them. Generally, however, the cost of goods sold of more protective caskets is higher. If casket retailers were to increase competition on casket *prices* and bring those prices closer to marginal costs, then more protective caskets would become more affordable for consumers with limited funds and their use would likely increase. If a consumer were able to spend, for example, $2000 on a casket, a more competitive casket market would likely lead to that consumer procuring a higher quality caskets. Because nothing prevents licensed funeral directors from selling shoddy caskets at high prices, the licensing requirement bears no rational relationship to increasing the quality of burial containers.