USCA1 Opinion

 

United States Court of Appeals

For the First Circuit

No. 02-1666

KITTERY MOTORCYCLE, INC.,

Plaintiff, Appellant,

v.

G. STEVEN ROWE, ATTORNEY GENERAL

OF THE STATE OF MAINE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lipez, Circuit Judge,

 Coffin and Stahl, Senior Circuit Judges.

 Barry A. Bachrach, with whom Christine S. Collins and Bowditch
& Dewey, LLP, were on brief, for appellant.

 Christopher C. Taub, Assistant Attorney General, with whom
G. Steven Rowe, Attorney General for the State of Maine, and Paul
Stern, Deputy Attorney General, were on brief, for appellee.

 Bruce C. Gerrity, with whom Michael Kaplan and Preti Flaherty
Beliveau Pachios & Haley, LLC, were on brief, for amicus curiae
Maine Automobile Dealers Association, Inc., in support of appellee.

 

February 13, 2003

 LIPEZ, Circuit Judge. This appeal requires us to revisit
the constitutional propriety of a state's Sunday closing laws. 
Appellant Kittery Motorcycle, Inc. ("Kittery") is a motorcycle
dealership located in Kittery, Maine, near the New Hampshire
border. Kittery claims that Maine's Sunday closing laws, Me. Rev.
Stat. Ann. tit. 17, §§ 3203-3204 (West Supp. 2002), violate the
United States Constitution's guarantees of equal protection and due
process because, as a result of numerous exemptions enacted over
the past half century, these laws authorize the sale of everything
on Sundays except motor vehicles (defined to include motorcycles
under Maine law). Kittery claims that, as a consequence, it loses
substantial business to dealerships in New Hampshire, a state that
permits the sale of motorcycles on Sunday.

 While Sunday closing laws may be vestiges of a bygone
era, we conclude that the laws at issue are not constitutionally
infirm. Just as the district court rejected Kittery's challenge to
Maine's Sunday closing laws, so do we.

I.

A. Maine's Sunday Closing Laws

 Maine's general Sunday closing law opens with the
following pronouncement: "No person, firm or corporation may, on
the Lord's Day . . . keep open a place of business to the public,
except for works of necessity, emergency or charity." (1) Me. Rev.
Stat. Ann. tit. 17, § 3204 (West Supp. 2002). The statute is
criminal in nature. First-time offenders "shall be punished by a
fine of not more than $100 or by imprisonment for 30 days, or by
both." Id. The penalties increase substantially for repeat
offenders. Id.

 Over the years, the Maine legislature has exempted dozens
of different businesses from the law's application. As of 2002,
the law exempted such diverse businesses as seasonal dairy stands,
ship chandleries, textile plants, bowling alleys, and real estate
brokers. Id. Another exemption applies to retail stores that
employ no more than five persons. Id. Likewise, retail stores
that have "no more than 5000 square feet of interior customer
selling space" may open on Sundays. Id. Finally, a 1990 amendment
carved out an exemption that practically swallowed the rule --
retail stores larger than 5000 square feet may open on Sundays
provided that they do not require their employees to work that
day. (2) Id.

 However, section 3203 is explicit in its prohibition of
motor vehicle sales: 

 Except as provided in section 3203-A, (3) any
person who carries on or engages in the
business of buying, selling, exchanging,
dealing or trading in new or used motor
vehicles; or who opens any place of business
or lot in which that person attempts to or
does engage in the business of buying,
selling, exchanging, dealing or trading in new
or used motor vehicles; or who does buy, sell,
exchange, deal or trade in new or used motor
vehicles as a business on the first day of the
week, commonly known and designated as Sunday,
is a disorderly person.

Me. Rev. Stat. Ann. tit. 17, § 3203 (West Supp. 2002). Under Maine
law, a motorcycle is considered a "motor vehicle." Me. Rev. Stat.
Ann. tit. 29-A, § 101(38) (West 1996 & Supp. 2002). A person
convicted of violating section 3203 is subject to a fine of no more
than $100, imprisonment for not more than ten days, or both. Me.
Rev. Stat. Ann. tit. 17, § 3203 (West Supp. 2002). As with section
3204, the penalties increase substantially for repeat offenders. 
See id. § 3203 ("[T]he 3rd or each subsequent offense must be
punished by a fine of not more than $750 or by imprisonment for not
more than 6 months, or by both.").

B. Proceedings Below

 Kittery filed suit in the United States District Court
for the District of Maine on August 10, 2001, seeking a declaratory
judgment that sections 3203 and 3204 are "unconstitutional to the
extent they prohibit motorcycle dealers from selling motorcycles in
Maine on Sundays." In the alternative, Kittery sought a
declaration that its dealership could legally operate on Sundays
pursuant to the 1990 amendment to section 3204 (the exemption for
retail stores larger than 5000 square feet).

 Following limited discovery, both sides moved for summary
judgment. Kittery assailed the closing laws on a number of fronts. 
First, it argued that sections 3203 and 3204 violate the United
States Constitution's guarantees of equal protection and due
process in that they single out motor vehicle dealerships for
closure while permitting every other business to remain open on
Sundays. Next Kittery argued that, assuming arguendo that the
state could constitutionally proscribe Sunday motor vehicle sales,
the state had no rational basis for classifying motorcycles as
"motor vehicles." Kittery maintained that motorcycles are more
akin to recreational vehicles -- such as all-terrain vehicles and
snowmobiles -- whose sale on Sundays is not proscribed. Finally,
Kittery argued that sections 3203 and 3204 are unconstitutionally
vague and that the 1990 amendment to section 3204 impliedly
repealed section 3203.

 In a thoughtful opinion, the district court expressed
frustration with the seemingly "illogical" nature of the statutory
scheme. Ultimately, however, the district court held that
Kittery's arguments must fail in light of the constitutional
presumption that "absent some reason to infer antipathy, . . .
judicial intervention is generally unwarranted no matter how
unwisely we may think a political branch has acted." Kittery
Motorcycle, Inc. v. Rowe, 201 F. Supp. 2d 189, 194 (D. Me. 2002)
(quoting F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 314
(1993)). Judgment for the defendant was entered accordingly, and
this appeal ensued. "Where, as here, summary judgment has been
granted, the court of appeals reviews the matter de novo, regarding
the record and all reasonable inferences therefrom in the light
most hospitable to the party who lost below." Grant's Dairy --
Maine, LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232
F.3d 8, 14 (1st Cir. 2000). 

II.

A. The Equal Protection and Due Process Claims

 As explained above, Kittery claims that Maine's Sunday
closing laws violate constitutional guarantees of equal protection
and substantive due process. (4) In making its claims, Kittery does
not argue that an equal protection analysis differs in any way from
a due process analysis. Indeed, the parties have, by and large,
framed their arguments almost solely in terms of equal protection. 
Accordingly, we will analyze Kittery's claims solely in terms of
equal protection. See Minnesota v. Clover Leaf Creamery Co., 449
U.S. 456, 470 n.20 (1981) (remarking that if statute does not
violate equal protection, "it follows a fortiori that [it] does not
violate the Fourteenth Amendment's Due Process Clause"); Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971, 976 n.7 (1st Cir. 1989)
(noting that "the type and kind of scrutiny applied, and the
result, would be no different on either theory").

 The Supreme Court has developed a tripartite rubric for
evaluating equal protection challenges to legislation. When a
statute burdens certain "fundamental rights" -- e.g., voting rights
or the right to interstate travel -- a reviewing court will strictly
scrutinize that statute, upholding it only if the government can
clearly demonstrate a compelling interest incapable of being served
by less intrusive means. See, e.g., Atty. Gen. of N.Y. v. Soto-Lopez, 476 U.S. 898, 906 (1986) (right to interstate travel);
Storer v. Brown, 415 U.S. 724, 756 (1974) (Brennan, J., dissenting)
(voting rights). Likewise, a reviewing court will apply strict
scrutiny if a legislative distinction is based on a "suspect"
classification such as race or national origin. See, e.g., Shaw v.
Reno, 509 U.S. 630, 643-45 (1993) (racial classifications). By the
same token, the Supreme Court has identified other classifications,
such as illegitimacy, which are less "suspect" and thus subject to
a less exacting level of scrutiny, often characterized as
"intermediate" scrutiny. In such cases, the government must
demonstrate at a minimum that the challenged classification is
"substantially related to an important government objective." 
Clark v. Jeter, 486 U.S. 456, 461 (1988).

 All other regulations, including the statute under review
in this case, are subject to the third and least exacting tier of
scrutiny -- rational basis: "Social and economic legislation . . .
that does not employ suspect classifications or impinge on
fundamental rights must be upheld . . . when the legislative means
are rationally related to a legitimate government purpose." Hodel
v. Indiana, 452 U.S. 314, 331 (1981). The parties do not dispute
that Kittery's equal protection challenge to Maine's Sunday closing
laws entails this lowest level of scrutiny. Kittery maintains,
however, that even under this rational basis test, Maine's Sunday
closing laws are unconstitutional as applied to automobile and
motorcycle dealerships.

 Kittery faces an uphill battle. Under the rational basis
test, the classifications in Maine's Sunday closing laws "come[] to
us bearing a strong presumption of validity," Beach
Communications, 508 U.S. at 314. As another court has noted,
"[e]ven foolish and misdirected provisions" will be upheld under
this test. Craigmiles v. Giles, 312 F.3d 220, 223-24 (6th Cir.
2002). Kittery's task is made all the more difficult because the
state, in order to defeat Kittery's claim, need only articulate
some "reasonably conceivable set of facts" that could establish a
rational relationship between the challenged laws and the
government's legitimate ends. Montalvo-Huertas, 885 F.2d at 978. 
These proffered facts "need not be supported by an exquisite
evidentiary record." Craigmiles, 312 F.3d at 224. Indeed, they
need not be supported by any evidentiary record at all. See Heller
v. Doe, 509 U.S. 312, 320 (1993) ("A State, moreover, has no
obligation to produce evidence to sustain the rationality of a
statutory classification."); Beach Communications, 508 U.S. at 315
("[A] legislative choice is not subject to courtroom factfinding
and may be based on rational speculation unsupported by evidence or
empirical data."). With these general constraints in mind, we now
turn to the particulars of this case.

 Kittery first attacks the Sunday closing laws as they
apply to motor vehicle dealerships, asserting that the myriad
accumulated exceptions to the laws "have rendered the scheme
arbitrary and illogical." Thus, according to Kittery, the closing
laws "no longer bear a rational relationship to the statute's
purported purpose[]," the promotion of Sunday as a day of rest and
relaxation. We soundly rejected an identical argument in Montalvo-Huertas. In that case, a convenience store owner filed suit in the
district court in Puerto Rico, challenging the commonwealth's
Sunday closing laws as unconstitutional. Montalvo-Huertas, 885
F.2d at 973. Following an evidentiary hearing, the district court
enjoined enforcement of the closing laws. Id. at 974. In
defending the injunction on appeal, the plaintiff made the same
argument Kittery now espouses, "complaining that the Closing Law's
coverage is so spotty, and its exemptions so prevalent, that it has
become ineffectual, hence irrational." Id. at 980. We rejected
that contention, noting that

 the legislature need not approach goals on an
all-or-nothing basis: "reform may take one
step at a time, addressing itself to the phase
of the problem which seems most acute to the
legislative mind. . . . The legislature may
select one phase of one field and apply a
remedy there, neglecting the others."

Id. at 981 (quoting Williamson v. Lee Optical Co., 348 U.S. 488,
489 (1955)); see also City of New Orleans v. Dukes, 427 U.S. 297,
303 (1976) (per curiam) ("States are accorded wide latitude in the
regulation of their local economies under their police powers, and
rational distinctions may be made with substantially less than
mathematical exactitude."). In considering the plaintiff's
argument, we stated: "To uphold the Closing Law, it is enough if
each exemption is rationally related to some legitimate legislative
aim, and if the exemptions, collectively, do not erode the
rationality of the legislative scheme as a whole." Montalvo-Huertas, 885 F.2d at 981 (original emphasis). We then "inspected
the exemptions one by one" and were "satisfied they [did] not
defeat the Closing Law's constitutionality." (5) Id.

 Apparently recognizing the precedential hurdle of
Montalvo-Huertas, Kittery does not argue that each and every one of
section 3204's listed exemptions fails to have a rational basis. 
Nor does Kittery argue that the promotion of Sunday as a day of
rest is an illegitimate government purpose. Rather, Kittery tries
to circumvent Montalvo-Huertas by arguing that Maine's Sunday
closing laws, in effect, single out motor vehicle sales for
prohibition. Kittery points out that the provisions of sections
3203 and 3204, read together, permit any retail business to open on
Sundays except for motor vehicle dealerships. See Me. Rev. Stat.
Ann. tit. 17, §§ 3203-3204 (West Supp. 2002). This singling out of
motor vehicle sales, according to Kittery, is utterly irrational. (6) 
In reply, the state claims that the legislature could have
reasonably assumed that sales commissions form a substantial
portion of the compensation of most motor vehicle salespersons. 
The legislature could have therefore reasonably concluded that
motor vehicle salespersons would feel compelled to work on Sundays
in order to earn commissions, regardless of whether their employers
actually required them to work, thereby undermining the state's
legitimate goal of promoting Sunday as a day of rest. Kittery
responds by pointing out that real estate brokers and motor home
salespersons can work on Sundays, see Me. Rev. Stat. Ann. tit. 17,
§§ 3203-A, 3204 (West Supp. 2002), even though they typically work
on a commission basis. Thus, Kittery maintains, it is arbitrary
and irrational for the state to treat motor vehicle dealers any
differently.

 The difficulty with Kittery's response is twofold. 
First, it assumes that there must be a precise, mathematical fit
between the classification and the legitimate government purpose
the classification serves -- an altogether insupportable assumption
given the unexacting nature of rational basis review. See Dukes,
427 U.S. at 303; Montalvo-Huertas, 885 F.2d at 980. Second, as the
state argues, the legislature could have reasonably concluded that
the people of Maine are more fundamentally in need of shelter and
housing than simple transportation, thereby justifying an exemption
for the sale of homes, including motor homes. Or the legislature
could have reasonably determined that it would be impractical to
enforce a Sunday prohibition on home sales because much of a real
estate broker's work takes place in the properties being shown
(thus making the policing of such a prohibition overly
burdensome). (7) Or the legislature could have reasonably concluded
that motor homes are used almost exclusively for recreational
purposes (i.e., no one drives a motor home to work), and that the
Sunday sale of motor homes therefore actually promotes Sunday as a
day of rest, relaxation, and recreation. (8) Regardless of the
underlying justifications and rationales, this court is not the
forum in which to weigh their respective merits. Suffice it to say
that they are not so spurious as to render the statute "palpably
arbitrary." Nordlinger v. Hahn, 505 U.S. 1, 18 (1992). Thus
Kittery's attack against Maine's Sunday closing scheme -- as it
applies to motor vehicle dealerships -- must fail. (9)

 In addition to challenging the state's decision to treat
motor vehicle dealerships differently from other retail
establishments, Kittery also challenges the state's decision to
classify motorcycles as motor vehicles. (10) See Me. Rev. Stat. Ann.
tit. 29-A, § 101(38) (West 1996 & Supp. 2002). According to
Kittery, "motorcycles are recreational vehicles, and as such are
similarly situated with other recreational vehicles and equipment
that can be sold on Sundays." Hence, Kittery maintains, the
legislature's decision to classify motorcycles as motor vehicles is
"arbitrary and irrational." We disagree.

 In its brief, Kittery states that, "[i]n Maine, one
purchases a motorcycle not as a mode of transportation, but as a
form of recreation akin to snowmobiles, boats, motor homes, jet
skis, or all-terrain vehicles." In support of this pronouncement,
Kittery points us to affidavits and deposition testimony of
Kittery's vice-president and its general manager. With all due
respect to Kittery and its staff, reasonable minds can differ, and
the legislature could have reasonably concluded that, weather
permitting, many people in Maine would use motorcycles as a mode of
general transportation (for example, to go to and from work or
school). And the legislature could have just as reasonably
concluded that not many people in Maine would use snowmobiles,
boats, motor homes, jet skis, or all-terrain vehicles for such
routine transportation purposes. Buttressing this conclusion is
the fact that motorcycles, like other motor vehicles, can be
operated on roads and highways, whereas all-terrain vehicles and
snowmobiles cannot. See Me. Rev. Stat. Ann. tit. 12, §§ 7827, 7857
(West 1994 & Supp. 2002). Similarly, motorcycle operators, like
motor vehicle operators, must be licensed, whereas operators of
all-terrain vehicles and snowmobiles need not. Id. §§ 7823, 7853. 

 In sum, we are not led to the inescapable conclusion that
the legislature acted irrationally when it chose to classify
motorcycles as motor vehicles rather than recreational vehicles. 
We agree with the observation of amicus that "[n]o doubt, the
Legislature could have treated motorcycles the way it treats
recreational (off road) vehicles for Sundays sales purposes." To
Kittery's detriment, however, the legislature chose not to, and we
will not disturb that decision.

B. Kittery's Other Arguments

 Before the district court, Kittery advanced two other
arguments -- that sections 3203 and 3204 are unconstitutionally
vague, and that the 1990 amendment to section 3204 impliedly
repealed section 3203. The district court, finding that Kittery
was "wrong and so clearly wrong on these issues," disposed of these
arguments in a footnote. We agree that these arguments may be
easily dispatched.

 First, as for the void-for-vagueness argument, the Due
Process Clause of the Fourteenth Amendment "requires that statutes
or regulations be sufficiently specific to provide fair notice of
what they proscribe." Brasslett v. Cota, 761 F.2d 827, 838 (1st
Cir. 1985). The statute must "define the criminal offense with
sufficient definiteness that ordinary people can understand what
conduct is prohibited and in a manner that does not encourage
arbitrary and discriminatory enforcement." Love v. Butler, 952
F.2d 10, 14 (1st Cir. 1991); see also United States v. Marquado,
149 F.3d 36, 41 (1st Cir. 1998). We cannot imagine how the text of
section 3203 could be more plain: "any person who carries on or
engages in the business of buying, selling, exchanging, dealing or
trading in new or used motor vehicles . . . on the first day of the
week, commonly known and designated as Sunday, is a disorderly
person." Me. Rev. Stat. Ann. tit. 17, § 3203 (West Supp. 2002). 
The statute indicates with sufficient intelligibility and
definiteness what conduct is prohibited, and we cannot discern any
way in which the statute lends itself to arbitrary or
discriminatory enforcement.

 Kittery also argues that the prohibitions of section 3203
were impliedly repealed by the 1990 amendment to section 3204. We
reject this argument as well. "Courts do not lightly assume that
one statute has implicitly repealed another." Greenless v. Almond,
277 F.3d 601, 608 (1st Cir. 2002); see United States v. Will, 449
U.S. 200, 221 (1980) ("As a general rule, repeals by implication
are not favored."); State v. London, 162 A.2d 150, 152 (Me. 1960)
("It is well settled that a repeal by implication is not favored
and will not be upheld in doubtful cases.").

 Given our reluctance to find an implied repeal, if we can
reasonably read the two statutes consonantly, we will. See Rhode
Island v. Narragansett Indian Tribe, 19 F.3d 685, 703 (1st Cir.
1994) ("In other words, so long as the two statutes, fairly
construed, are capable of coexistence, courts should regard each as
effective."). The most straightforward and obvious way to read the
two statutes in tandem is to treat section 3203 as a narrowly
focused prohibition on Sunday motor vehicle sales, and to regard
section 3204 as a law of general application, applicable to every
kind of business. Thus, retailers who qualify under 3204 may open
on Sunday, but they may not sell motor vehicles pursuant to section
3203. (11) See Radzanower v. Touche Ross & Co., 426 U.S. 148, 153
(1976) ("It is a basic principle of statutory construction that a
statute dealing with a narrow, precise, and specific subject is not
submerged by a later enacted statute covering a more generalized
spectrum."). We therefore conclude that section 3203 governs the
sale of motor vehicles on Sunday, notwithstanding the 1990
amendment to section 3204. (12)

III.

 For the foregoing reasons, the judgment of the district
court is AFFIRMED. Costs to appellee.

 It is so ordered.
1. "The Lord's Day includes the time between 12 o'clock on
Saturday night and 12 o'clock on Sunday night." Me. Rev. Stat.
Ann. tit. 17, § 3201 (West 1983).
2. The amendment began in the Maine legislature as an
"Initiated Bill." See 1989 Me. I.B. 3; see also Me. Const. art.
IV, pt. 3, § 18 (providing for direct initiative of legislation). 
The Maine electorate approved the proposed amendment at the general
election held on November 6, 1990.
3. Section 3203-A exempts "motor homes" from the purview of
section 3203. Me. Rev. Stat. Ann. tit. 17, § 3203-A (West Supp.
2002).
4. See U.S. Const. amend. XIV, § 1 ("No State shall . . .
deprive any person of life, liberty, or property, without due
process of law; nor deny to any person within its jurisdiction
equal protection of the law.").
5. While we considered each of the statutory exemptions in
Montalvo-Huertas, we did not explicitly address each and every one
in our opinion. "In the interests of brevity, we discuss[ed] only
those exceptions which [had] drawn [plaintiff's] heaviest fire." 
Montalvo-Huertas, 885 F.2d at 981. For example, we concluded that
an exemption for businesses in the Old San Juan tourist zone "could
reasonably be found to promote the public weal by sustaining an
important local industry, one whose clientele are in Puerto Rico to
play, not work -- and to whom the 'day of rest' concept does not
apply." Id.
6. Kittery does not allege any animus or improper motive on the
part of the legislature in singling out motor vehicle dealerships. 
See Romer v. Evans, 517 U.S. 620, 634 (1996) ("[I]f the
constitutional conception of 'equal protection of the laws' means
anything, it must at the very least mean that a bare . . . desire
to harm a politically unpopular group cannot constitute a
legitimate governmental interest."). Indeed, the Maine Auto
Dealers Association, "an association of franchised new car and
truck dealers with approximately 150 members located throughout the
State of Maine," has filed an amicus brief in support of the state. 
The Association, on behalf its members, was the original sponsor of
section 3203 and over the years has "repeatedly lobbied against
attempts to amend, repeal or water down" the statute. Amicus Br.
at 1.
7. In contrast, one need only drive past the dealership's fixed
location to determine whether the closing law is being violated.
8. The state quotes much of the legislative history in support
of its proffered justifications. While we appreciate the
thoroughness of the state's brief, we feel obliged to point out
that, under rational basis review, it is "'constitutionally
irrelevant [what] reasoning in fact underlay the legislative
decision.'" U.S. R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 179
(1980) (quoting Flemming v. Nestor, 363 U.S. 603, 612 (1960)).
9. The state also claims that the Sunday closing laws are
rationally related to other legitimate state interests -- e.g.,
reducing overhead costs in an inelastic market and providing a day
in which consumers can browse without being bothered by
salespersons. Having determined that the closing laws are
rationally related to the state's legitimate interest in the
promotion of Sunday as a day of rest, we need not consider these
other arguments.
10. "'Motorcycle' means a motor vehicle that has a seat or a
saddle for the use of the rider and is designed to travel with not
more than 3 wheels in ground contact." Me. Rev. Stat. Ann. tit.
29-A, § 101(38) (West 1996 & Supp. 2002).
11. The record reflects that this is precisely what the
plaintiff has done in the past -- remain open on Sundays for the
sale of other merchandise, but not motorcycles.
12. Although the statutory provisions themselves refute any
argument for implied repeal, we note that the legislative activity
subsequent to the 1990 amendment confirms the unmistakable import
of the statutes. In 1995 the Maine Legislature refused to enact a
bill which would have expressly repealed section 3203, see An Act
to Permit Motor Vehicle Dealerships to Operate on Sundays, L.D.
109, 117th Leg., 1st Sess. (Me. 1995) (unenacted), and in 2001
refused to enact a bill which would have exempted the sale of
motorcycles from section 3203, see An Act to Permit the Sale of
Motorcycles on Sunday, L.D. 68, 120th Leg., 1st Sess. (Me. 2001)
(unenacted). The floor debates around this latter bill -- which was
cosponsored by Kittery's representative on Kittery's behalf -- make
clear that no one thought that the 1990 amendment had impliedly
repealed section 3203. See 120 Me. Legis. Rec. H-489 (Apr. 25,
2001) ("As it is, six days [of the week] you are able to buy the
motorcycle.") (statement of Rep. Thomas); id. H-491 ("I guess I
just can't understand why we, as a government, have to hang on to
this one little vestige of what somebody called the blue laws and
not allow this one individual [Kittery] to stay open and run his
business and try to make a sale or two.") (statement of Rep.
Morrison).