NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0163n.06

Case No. 21-1337

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| YEAGER ASPHALT, INC.; YEAGER PAVING MATERIALS, LLC, dba U.S. Paving & Stone Materials, | ) ) ) ) | **FILED** Apr 19, 2022 DEBORAH S. HUNT, Clerk |
| Plaintiffs - Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| CHARTER TOWNSHIP OF SAGINAW, MICHIGAN, | ) ) ) | |
| Defendant - Appellee. | ) | |

Before: COLE, GIBBONS, LARSEN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Yeager Asphalt, Inc. ("Yeager Asphalt") and Yeager Paving Materials, LLC ("Yeager Materials") brought action under 42 U.S.C. § 1983 against the Charter Township of Saginaw, alleging the Township violated their constitutional rights under the Fourteenth Amendment's Equal Protection Clause. The district court granted the Township's motion for summary judgment. On appeal, Yeager Materials asks this court to reverse the grant of summary judgment and to remand for further proceedings. Because Yeager Asphalt lacks standing and because Yeager Materials failed to negate every conceivable basis which might support the Township's actions or allege that the Township's actions were motivated by animus, the district court properly dismissed their equal protection claim. We affirm the district court's grant of summary judgment to the Township.

I

Plaintiff-appellant Yeager Asphalt is a company that installs hot mix asphalt for parking lots, driveways, private roads, and other areas except for highways; plaintiff-appellant Yeager Materials manufactures and produces hot mix asphalt for installers. Yeager Asphalt's business focuses on commercial clients, and it occasionally performs some government work. Yeager Materials manufactures and sells asphalt at retail, and it does not typically bid on government projects. Both companies are owned by Mark Yeager and, although the two do not have an exclusivity agreement, Yeager Asphalt is one of Yeager Materials's biggest clients, and Yeager Asphalt claims to source only from Yeager Materials to the extent possible. Yeager Materials's asphalt manufacturing facility is not certified by the Michigan Department of Transportation ("MDOT"); when Yeager Materials has a project requiring asphalt that meets MDOT standards, it has third-party engineers approve the asphalt mix.

Defendant-appellee Charter Township of Saginaw (the "Township") issued a request for bids in 2019 for a small shoulder repaving project. The bid request included the following language: "Saginaw Charter Township requires asphalt from **Ace-Saginaw Paving Company** to meet MDOT specifications and proof of purchase from **Ace-Saginaw**." DE 1-1, Bid Request, Page ID 10 (emphasis in original). The Township received three quotes on the project from three different companies: L.M. Satkowiak & Sons Inc., for $2,340; Mr. Asphalt, for $4,200; and Quality Asphalt, for $5,100. L.M. Satkowiak & Sons submitted the lowest bid, and it was awarded the contract. Neither Yeager Asphalt nor Yeager Materials bid on the project.

On April 25, 2020, Yeager Asphalt and Yeager Materials filed a one-count complaint against the Township, alleging the Township violated the Fourteenth Amendment's Equal Protection Clause because the Ace-Saginaw requirement imposed a policy of economic

protectionism that served no legitimate government interest. As relief, plaintiffs sought "(1) a judgment 'declaring the conduct of [the Township] as being unconstitutional,' (2) an injunction 'to halt and also prevent the future uses of the established bidding processes and procedures which violates [sic] Plaintiffs' equal protection rights,' (3) an award of nominal damages, and (4) attorney fees and costs." *Yeager Asphalt, Inc. v. Charter Twp. of Saginaw*, No. 1:20-CV-11022, 2021 WL 1238133, at *2 (E.D. Mich. Apr. 2, 2021) (alteration in original) (quoting DE 1, Compl., Page ID 7–8). The district court granted the Township's motion for summary judgment, denied plaintiffs' motion for summary judgment, and dismissed the complaint.

II

We review a grant of summary judgment de novo, "drawing all reasonable inferences in favor of the non-moving party." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). "Summary judgment is appropriate only when the evidence, taken in the light most favorable to the nonmoving party, establishes that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "A genuine issue of material fact exists when there are 'disputes over facts that might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment is not proper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The district court granted the Township's motion for summary judgment. First, it held that Yeager Asphalt lacked constitutional standing. Second, it held that Yeager Materials's equal protection claim failed because it did not introduce evidence that it was singled out for adverse treatment or evidence overcoming the Township's presumption of rationality. On appeal,

appellants ask us to reverse the district court's grant of summary judgment to the Township and to remand the case for further proceedings. The district court properly granted summary judgment to the Township, and we affirm.

A

Parties must have standing to properly bring suit in federal court. Constitutional standing, which is rooted in Article III's "Case or Controversy" requirement, has been interpreted to require three distinct elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . .; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). We discuss Yeager Asphalt and Yeager Materials's standing in turn.

The district court correctly concluded Yeager Asphalt does not have standing to bring an equal protection claim against the Township over the Ace-Saginaw requirement. Standing requires injury in fact and causation, both of which Yeager Asphalt lacks. Yeager Asphalt claims the Ace-Saginaw requirement caused it economic injury because the requirement was, in effect, a "refusal to allow [Yeager Asphalt] to bid on the contract *because it would* [] *have* [] proposed to use hot asphalt mix from Yeager Materials." CA6 R. 16, Appellants' Br., at 16 (emphasis added). Such speculative language reflects the speculative nature of the alleged harm.

The challenged Ace-Saginaw requirement did not prevent Yeager Asphalt from bidding; it only required bidders to source asphalt from Ace-Saginaw. Yeager Asphalt admitted that its choice to not source asphalt from Ace-Saginaw would have been a "business decision." DE 13-1, Yeager Deposition, Page ID 238. The record is entirely devoid of evidence that could allow a

- 4 -

reasonable factfinder to make a causal connection between the Ace-Saginaw requirement and Yeager Asphalt's alleged constitutional injury. Yeager Asphalt did not suffer an injury in fact that is fairly traceable to the Township's Ace-Saginaw requirement; therefore, the district court appropriately dismissed Yeager Asphalt's claims for lack of subject matter jurisdiction due to its lack of standing. We affirm.

The district court determined Yeager Materials has standing to bring its equal protection claim against the Township. We agree. Yeager Materials suffered an injury in fact caused by the Township's Ace-Saginaw requirement that is redressable by the relief sought. The Township required asphalt for the project be sourced from Ace-Saginaw, which entirely precluded bidders from sourcing asphalt from Yeager Materials. This inflicted an economic injury that is neither "conjectural" nor "hypothetical" and is "fairly traceable" to the Township's decision. *See Lujan*, 504 U.S. at 560. Although the Township has since removed the Ace-Saginaw requirement, Yeager Materials is requesting nominal damages. "[A] request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). Thus, the redressability element is also satisfied. Because Yeager Materials has established injury in fact, causation, and redressability, we affirm the district court's finding that Yeager Materials has standing.

B

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Government actions may not make distinctions that "burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.

2005); *see also TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 788 (6th Cir.

2005). The district court granted summary judgment to the Township, explaining:

> First, Yeager Materials has not introduced any evidence that it was singled out for adverse treatment. . . . The Sixth Circuit has held that class-of-one claims premised on the special treatment of one party over others are not cognizable. . . . Accordingly, Yeager Materials does not allege a cognizable equal protection claim. . . . Second, Yeager Materials has not introduced evidence overcoming the Township's "presumption of rationality."

*Yeager Asphalt*, 2021 WL 1238133, at *6 (citations omitted). On appeal, Yeager Materials argues

the district court "self-selected" and "arbitrarily imposed" a class of one theory. Yeager Materials

has not alleged infringement of a fundamental right or that it is a member of a suspect class; rather,

it claims that the Ace-Saginaw requirement violates rational basis review and that it proffered

evidence of adverse treatment and evidence overcoming any presumption of rationality.

The district court erred by imposing a class-of-one theory, but this error is not relevant to

the outcome because Yeager Materials concedes that rational basis review applies. As we

explained in *Davis v. Prison Health Services*:

> [T]he district court improperly grouped "class-of-one" claims with other types of claims subject to rational basis scrutiny. The district court's confusion on this issue likely stems from language found in . . . *Club Italia Soccer & Sports Organization, Inc. v. Charter Township of Shelby*, 470 F.3d 286 (6th Cir. 2006). In *Club Italia*, this court stated that "[w]hen a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called 'class of one' theory and must prove that the government's actions lacked any rational basis." *Id.* at 298. The *Club Italia* formulation blended together the "class-of-one" concept and the standard of review for an equal protection claim that does not target a suspect class or burden a fundamental right— *i.e.*, rational basis review—to erroneously suggest that every claim subject to rational basis review is a "class-of-one" claim. Although all "class-of-one" claims are subject to rational basis review, not all claims subject to rational basis review are "class-of-one" claims.

679 F.3d 433, 440–41 (6th Cir. 2012). The district court committed the same error here. It is true

that Yeager Materials did not allege that the Ace-Saginaw requirement burdens a fundamental

right or targets a suspect class. But it also did not allege a "class of one" equal protection claim.

Rather, Yeager Materials argued that the Township's requirement treats it and other asphalt manufacturers differently than Ace-Saginaw, without a rational basis.

Nevertheless, Yeager Materials concedes that, regardless of whether its claims can be properly classified as a "class of one," rational basis review is appropriate. It acknowledges that "a plaintiff 'demonstrates that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will.'" CA6 R. 16, Appellants' Br., at 11 (alteration in original) (quoting *Yeager Asphalt*, 2021 WL 1238133, at *5). Although not "toothless," CA6 R. 16, Appellants' Br., at 3, rational basis review is "a paradigm of judicial restraint" that recognizes "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993). Yeager Materials failed to show that the Township lacked a rational basis in imposing the Ace-Saginaw requirement.

Yeager Materials seeks to avoid dismissal of its equal protection claim by attempting to shift the burden of proof to the Township. It argues the Township has offered no rational basis for its actions and, therefore, had no "rationally-related governmental interest in having a singularly-named raw material supplier." CA6 R. 16, Appellants' Br., at 23. But under rational basis review, the Township has no obligation to offer a rational basis for its decisions so long as this court can conceive of one. *See, e.g., TriHealth*, 430 F.3d at 790 ("The [defendant] has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" (quoting *Beach Commc'ns*, 508 U.S. at 315)). The burden falls entirely to Yeager Materials to show there is no rational basis, and Yeager Materials failed to carry this burden.

Yeager Materials has not introduced evidence overcoming the Township's presumption of rationality. It claims that the Township's Ace-Saginaw provision is private economic protectionism for the Ace-Saginaw Paving Company. Although general economic protectionism is not a legitimate state interest, *see City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978), Yeager Materials has introduced no evidence that the Township's stated purpose of quality assurance is a pretext for protecting private economic interests from competition.

The Township, according to its interrogatory responses and brief on appeal, added the Ace-Saginaw requirement as part of its determination to "ensure the quality of asphalt materials used by its asphalt contractors . . . meet MDOT specifications" and are "sourced from an MDOT-certified asphalt plant." CA6 R. 18, Appellee Br., at 10. Ace-Saginaw operates its own MDOT-certified asphalt testing labs; Yeager Materials, although it has a third-party verify that its asphalt meets MDOT standards, is not an MDOT-certified plant. The Township's desire to source high-quality asphalt materials is rationally related to the Ace-Saginaw requirement because it ensures the materials come from an MDOT-certified plant. Although the Township could have simply required that asphalt be sourced from an MDOT-certified plant, which would still preclude Yeager Materials, it was under no obligation to do so. Rational basis review requires a rational fit, not a perfect fit, between government action and conceivable explanations. *See Craigmiles v. Giles*, 312 F.3d 220, 227 (6th Cir. 2002) ("Rational basis review, however, does not require the best or most finely honed legislation to be passed.").

Nevertheless, Yeager Materials claims the Ace-Saginaw requirement was a pretext for private economic protectionism because other manufacturers, including Yeager Materials, produce asphalt mixtures meeting MDOT standards—albeit, not produced in a facility with in-house, MDOT-certified labs. Yeager Materials argues that this situation is analogous to *Craigmiles*,

which held that "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." 312 F.3d at 224. The district court, however, correctly distinguished *Craigmiles*.

In *Craigmiles*, we held that a Tennessee law forbidding the sale of funeral caskets by anyone other than state-licensed "funeral directors" violated the Equal Protection clause. 312 F.3d at 222, 229. The state's proffered justifications for the law—promoting public health and safety— were clearly pretextual and represented a "naked attempt to raise a fortress protecting the monopoly rents that funeral directors extract from consumers." *Id.* at 229. Unlike in *Craigmiles*, this case does not involve fortification of monopoly rents or a "circuitous path to legitimate ends when a direct path is available." *Id.* at 227. The Township sought high-quality asphalt and limited its bid request to an asphalt manufacturer that unequivocally operates an MDOT-certified plant. Although the Township could have drafted a more inclusive bid request, it was under no obligation to do so. Moreover, Yeager Materials has not introduced any evidence of monopoly rents, a circuitous path, animus, or ill-will. The district court did not err in its conclusion that Yeager Materials failed to introduce evidence of the Township's motives being pretextual.

Although Yeager Materials has standing, it fails to state a claim for relief under the Equal Protection Clause because it did not negate every conceivable basis which might support the Township's actions or allege that the Township's actions were motivated by animus. Therefore, the district court properly dismissed Yeager Materials's equal protection claim. We affirm.