# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00057-CV

**Appellants, Ashish Patel, Anverali Satani, Nazira Momin, Tahereh Rokhti, Minaz Chamadia, and Vijay Lakshmi Yogi // Cross Appellants, Texas Department of Licensing and Regulation; William H. Kuntz, Jr., in his official capacity, et. al.**

**v.**

**Appellees, Texas Department of Licensing and Regulation; William H. Kuntz, Jr., in his official capacity, et al. // Cross Appellees, Ashish Patel, Anverali Satani, Nazira Momin, Tahereh Rokhti, Minaz Chamadia, and Vijay Lakshmi Yogi**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-09-004118, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

These cross-appeals concern the constitutionality of cosmetology statutes and administrative rules as they apply to eyebrow threading. *See* Tex. Occ. Code Ann. §§ 1601.002, 1601.251, 1602.002, 1602.251, 1602.403 (West 2004 & Supp. 2011); 16 Tex. Admin. Code §§ 83.1–83.120 (2011) (Tex. Dep't of Licensing and Regulation, Cosmetologists). Appellants Ashish Patel, Anverali Satani, Nazira Momin, Tahereh Rokhti, Minaz Chamadia, and Vijay Lakshmi Yogi, who are in the business of eyebrow threading, urge that eyebrow threading regulations

unreasonably interfere with their constitutional right to economic liberty under article I, section 19 of the Texas Constitution. *See id.*; Tex. Const. art. I, § 19.[1]

Facing competing motions for summary judgment, the district court granted summary judgment in favor of appellees the Texas Department of Licensing and Regulation (the Department), the Department's executive director, the Texas Commission on Licensing and Regulation (the Commission), and the Commission's members. On appeal, appellants contend that the district court erred in its summary judgment rulings and that it abused its discretion by admitting portions of an affidavit. The state defendants cross appeal, challenging the denial of their plea to the jurisdiction and motion to strike expert testimony. For the reasons that follow, we affirm the district court's judgment.

## BACKGROUND

Eyebrow threading is a facial hair removal technique using a single strand of cotton thread.[2] Appellants Patel and Satani have ownership interests in eyebrow threading businesses, and

---

[1] Article I, section 19 of the Texas Constitution provides that:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of law of the land.

Tex. Const. art. I, § 19.

[2] *See generally Kuntz v. Khan*, No. 03-10-00160-CV, 2011 Tex. App. LEXIS 446, at *3 (Tex. App.—Austin Jan. 21, 2011, no pet.) (mem. op.) (describing practice of eyebrow threading as "a method of shaping eyebrows by using a piece of 100-percent cotton thread to pull individual hair follicles out of the skin's pores").

the remaining appellants are individuals who are or were employed as eyebrow threaders. None of the appellants has a state cosmetology license.

The Department is the state agency charged with regulating cosmetology. Tex. Occ. Code Ann. §§ 51.051, 1602.001–.002, 1603.001–.002 (West 2004 & Supp. 2011). The Commission governs the Department and is statutorily authorized to appoint the Department's executive director, oversee the director's administration, formulate policy, and adopt administrative rules. *Id*. §§ 51.051, 51.101, 51.201, 1603.101 (West 2004 & Supp. 2011). The Department's executive director is responsible for administering the Department's programs. *Id.* § 51.103(a)(2) (West 2004).

The Department initiated administrative actions against appellants Momin, Rokhti, and Yogi, seeking to impose penalties against them for practicing eyebrow threading without a license.[3] *See id*. §§ 51.301–.302 (West 2004) (Executive Director or Commission authorized to impose administrative penalty per alleged violation per day), § 1602.251(a) (West Supp. 2011) ("A person may not perform or attempt to perform a practice of cosmetology unless the person holds a license or certificate to perform that practice."). The Department also investigated complaints against an eyebrow threading business owned by Satani concerning the employment of unlicensed eyebrow threaders, but no notice of alleged violation has been issued against the business.[4] *See id*. § 1602.403 (West Supp. 2011) (person holding beauty shop or speciality license may not employ unlicensed operator or specialist).

---

[3] The administrative actions against Momin, Rokhti, and Yogi remain pending. The Departments's prosecution of these actions was stayed by agreement of the parties to this litigation, without prejudice to any party.

[4] Prosecution of the complaints against Satani's business were also stayed by agreement of the parties to this litigation, without prejudice to any party.

3

Appellants thereafter brought this suit in December 2009, seeking declaratory and injunctive relief pursuant to the Uniform Declaratory Judgements Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (West 2008). In their pleadings, appellants alleged that "[w]ithout any changes in state law or administrative rules, Defendants have abruptly taken the position that threading is the practice of cosmetology, requiring government-issued licenses for both threading business owners and their employees."

Appellants, however, did not seek a declaration that the practice of eyebrow threading was outside the statutory definition of cosmetology. *See* Tex. Occ. Code Ann. § 1602.002 (West Supp. 2011) (definition of cosmetology).[5] Rather, they contended that the challenged cosmetology statutes and rules were unreasonable as applied to eyebrow threading and violated their constitutional right "to earn an honest living in the occupation of one's choice free from unreasonable governmental interference," that the state defendants do not have an "important, legitimate, or rational reason for applying Texas' cosmetology laws and rules to the commercial practice of eyebrow threading," that "[t]he state's police power does not extend to the regulation of harmless commercial practices such as eyebrow threading," and that the state defendants are "presently and unconstitutionally requiring or attempting to require Plaintiffs to obtain licenses that are not reasonably related to their chosen occupation."

---

[5] The legislature amended the definition of cosmetology after this Court's decision in *Kuntz*. *See* Act of June 17, 2011, 82d Leg., R.S., ch. 1241, § 12, 2011 Tex. Gen. Laws 1241 (current version at Tex. Occ. Code Ann. § 1602.002 (West Supp. 2011)); *Kuntz,* 2011 Tex. App. LEXIS 446, at *21-24 (discussing whether eyebrow threading falls within statutory definition of cosmetology prior to 2011 amendment).

As to their pleaded claims for relief, appellants sought declaratory judgment that the state defendants "violate the privileges and immunities guarantee of the Texas Constitution by unreasonably interfering with Plaintiffs' right to pursue eyebrow threading" and "violate the due process guarantee of the Texas Constitution by unreasonably interfering with Plaintiffs' right to pursue eyebrow threading." They also sought "a permanent injunction barring Defendants from enforcing Texas' cosmetology laws—specifically Sections 1601.002, 1601.251, 1602.002, 1602.251, and 1602.403 of the Texas Occupations Code and Title 16, Sections 83.1 through 83.120 of the Texas Administrative Code—against Plaintiffs based on the commercial practice of eyebrow threading."[6]

Appellants filed a motion for summary judgment in October 2010. Appellants sought summary judgment on the ground that the state defendants' application of cosmetology laws and rules to the commercial practice of eyebrow threading was unconstitutional "because it places senseless burdens on eyebrow threaders and threading businesses without any actual benefit to public health and safety." They urged that the state defendants could not "constitutionally regulate the commercial practice of eyebrow threading as conventional cosmetology unless they can establish a real and substantial relationship between their regulations and the public's health and safety" and that

---

[6] *See* Tex. Occ. Code Ann. §§ 1601.002 (West Supp. 2011) ("barbering" defined), 1601.251, (West 2004) (certificate, license or permit required to perform act of barbering); 1602.002 (West Supp. 2011) ("cosmetology" defined), 1602.251 (West Supp. 2011) (license or certificate required to perform "practice of cosmetology"), 1602.403 (West Supp. 2011) (employment of license or certificate holder); 16 Tex. Admin. Code §§ 83.1–83.120 (2011) (Tex. Dep't of Licensing and Regulation, Cosmetologists). Although appellants' pleadings include provisions addressing "barbering," they have not made specific arguments concerning the regulation of barbering, focusing their challenge on cosmetology regulations. We, therefore, do the same.

5

the state defendants could not meet this standard. Their arguments included that "state cosmetology licensing [was] not necessary for safe eyebrow threading," that the state defendants "credentialing program [was] doing nothing to promote public health or competent threading in Texas," and that the statutes and rules were "grossly out of proportion to any legitimate health and safety objections the government may have."

Appellants attached evidence to support their motion, including affidavits of appellants, discovery responses by the state defendants, deposition excerpts, and an affidavit by their expert with attachments. Appellants presented evidence to support their positions that eyebrow threading is safe, that the beauty schools do not teach eyebrow threading, and that eyebrow threading is not tested as a condition of licensure. The evidence included costs to attend a state-licensed beauty school and to take the examinations and the required number of hours of instruction and curriculum. *See* Tex. Occ. Code Ann. §§ 1602.251, .254, .257 (West Supp. 2011) (license and certificate requirements for individuals); 16 Tex. Admin. Code §§ 83.20–.21 (individual license and examination requirements).

Around the same time, the state defendants filed a plea to the jurisdiction and motion for summary judgment, as well as a motion to strike appellants' expert testimony. In their plea and motion for summary judgment, the state defendants challenged appellants' standing and contended that appellants' claims were barred by sovereign immunity. As to the merits of appellants' claims, the state defendants argued, among other grounds, that the uncontested facts showed that appellants failed as a matter of law to articulate a privileges and immunities violation different from their substantive due process claim or to show that Texas cosmetology laws and implementing rules

6

deprived appellants of any substantive due process right or interest protected by article I, section 19 of the Texas Constitution. *See* Tex. Const. art. I, § 19. The State defendants attached evidence to support their plea and motion, including discovery responses by appellants and affidavits and deposition excerpts with attachments.

After a hearing, the district court denied the state defendants' plea to the jurisdiction and motion to strike expert testimony but granted their motion for summary judgment and denied appellants' motion for summary judgment. The district court thereafter signed a final judgment. These cross appeals followed.

## ANALYSIS

### *State Defendants' Plea to the Jurisdiction*

We begin with the threshold jurisdictional issues raised by the state defendants on cross appeal. In their first three issues, the state defendants challenge the district court's denial of their plea to the jurisdiction.[7] They contend that appellants' UDJA suit is barred by sovereign immunity, urging that appellants failed to allege a viable ultra vires claim against the state officials and that there is no waiver of immunity to allow such claims directly against state entities. They also raise standing and ripeness challenges to appellants' claims.

---

[7] In their fourth issue, the state defendants challenge the district court's denial of their motion to strike expert testimony. Because we affirm the district court's summary judgment in favor of the state defendants, we need not address this issue. *See* Tex. R. App. P. 44.1, 47.1.

*A)      Standard of Review*

We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id.* at 226.  We construe the pleadings liberally in favor of the plaintiff. *Id.*  If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).  The court's "ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's jurisdiction." *Brantley v. Texas Youth Comm'n,* No. 03-10-00019-CV, 2011 Tex. App. LEXIS 8220, at *34–38 (Tex. App.—Austin Oct. 12, 2011, no pet.) (mem. op.) (citing *Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 513, 516 n.8 (Tex. App.—Austin 2010, no pet.)).

*B)      Sovereign Immunity*

The state defendants challenge the district court's jurisdiction to consider appellants' UDJA claims based upon sovereign immunity. "Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Miranda*, 133 S.W.3d at 225–26 (citing *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999)). To proceed in a suit against state entities and officials, a plaintiff must establish a waiver of immunity, *see Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Jones*, 8 S.W.3d at 638,

8

or that sovereign immunity is inapplicable. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (sovereign immunity does not prohibit "suits to require state officials to comply with statutory or constitutional provisions"); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) ("[S]uits for equitable remedies for violation of constitutional rights are not prohibited.").

### (i)      Claims against the Department and the Commission

As part of their first issue, the state defendants urge that appellants' claims are in substance ultra vires claims and, therefore, that there is no waiver of immunity to allow such claims directly against the Department and the Commission. *See Texas Dep't of Ins. v. Reconveyance*, 306 S.W.3d 256, 258–59 (Tex. 2010) (deeming allegations and requested declaration, in substance, ultra vires claims and dismissing claims against department); *Heinrich*, 284 S.W.3d at 372–73 (explaining that suits seeking to restrain official conduct that is ultra vires of an agency's statutory or constitutional powers "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity" because "'acts of officials which are not lawfully authorized are not acts of the State'" (citation omitted)). Appellants dispute that their claims are ultra vires claims and argue that they are properly asserted against the Department and the Commission, as well as against the Executive Director and the Commission members.

Sovereign immunity generally does not bar suit against a governmental entity that challenges the constitutionality of a statute and seeks injunctive relief. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994)) (holding that sovereign immunity did not bar UDJA suit against state agency that challenged statute itself and sought injunctive relief); *see also* Tex.

9

Const. art. I, § 29 ("[W]e declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."); *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (per curiam) ("'Suits for injunctive relief' may be maintained against governmental entities to remedy violations of the Texas Constitution." (citation omitted)); *City of Arlington v. Randall*, 301 S.W.3d 896, 906 (Tex. App.—Fort Worth 2009, pet. denied) ("Although no implied private right of action exists for money damages against governmental entities for violations of the Texas Constitution, a suit seeking an equitable remedy for violations of constitutional rights may be maintained against governmental entities." (citing *Bouillion*, 896 S.W.2d at 147)); *Texas Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 336 (Tex. App.—Austin 2009, pet. denied) ("Sovereign immunity does not shield a governmental entity from a suit for equitable relief for a violation of constitutional rights." (citing *Bouillion*, 896 S.W.2d at 149)).[8]

Further, although the UDJA does not establish subject matter jurisdiction, *see Texas Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) (stating that "the UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction'" (citation omitted)), the UDJA "expressly provides that persons may

---

[8] *Cf. Brantley v. Texas Youth Comm'n,* No. 03-10-00019-CV, 2011 Tex. App. LEXIS 8220, at *34–38 (Tex. App.—Austin Oct. 12, 2011, no pet.) (mem. op.) (in context of ultra vires claims, citing *Heinrich* to support conclusion that "any claim for equitable relief from a constitutional violation would . . . be barred by sovereign immunity" to the extent asserted against state agency); *Texas State Bd. of Public Accountancy v. Bass*, No. 03-09-00251-CV, 2011 Tex. App. LEXIS 294, *9–10, 25–26 (Tex. App.—Austin Jan. 14, 2011, no pet.) (mem. op.) (questioning holding in *City of Elsa* in light of *Heinrich* but recognizing that governmental entities not immune from suits challenging validity of statutes or ordinances).

challenge . . . statutes, and that governmental entities must be joined or notified." *Texas Lottery Comm'n v. First State Bank*, 325 S.W.3d 628, 634 (Tex. 2010) (quoting *Leeper*, 893 S.W.2d at 446); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004(a), .006.[9]

Among appellants' claims in their pleadings, they challenge the constitutionality of specific cosmetology statutes themselves as applied to the practice of eyebrow threading. *See Leeper*, 893 S.W.2d at 446; *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995) ("as applied" challenge to statute is challenge "under which the plaintiff argues that a statute, even though generally constitutional, operates unconstitutionally as to him or her because of the plaintiff's particular circumstances"). This claim does not require an interpretation of the challenged statutes that eyebrow threading falls outside the scope of those statutes. *See Texas Dept. of Licensing and Regulation v. Roosters MGC, LLC*, No. 03-09-00253-CV, 2010 Tex. App. LEXIS 4392, at *8–11 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.) (state agency immune from claims seeking declarations regarding proper interpretation of statute and that services at issue outside scope of statute). Appellants also seek a permanent injunction against the state defendants barring them from enforcing the challenged statutes against appellants for the commercial practice of eyebrow threading. Given their claim challenging specific statutes themselves and their requested injunctive relief, we conclude that the district court did not err in

---

[9] Similarly, section 2001.038 of the government code permits suits against state agencies for declaratory relief concerning the validity or applicability of their rules. *See* Tex. Gov't Code Ann. § 2001.038(a), (c) (West 2008) ("The state agency must be made a party to the action."); *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 529 (Tex. App.—Austin 2002, pet. denied) (section 2001.038 authorizes courts to determine whether "a rule is *valid* and/or *applicable*") (citation omitted, emphasis in original). Appellants, however, amended their pleadings to delete section 2001.038 of the government code as a basis for the district court's jurisdiction.

denying the state defendants' plea to the jurisdiction as to the state entities. *See Texas Lottery Comm'n*, 325 S.W.3d at 635; *City of Elsa*, 226 S.W.3d at 392.

*(ii)*      *Claims against the Executive Director and the Members of the Commission*

The state defendants also urge in their first issue that appellants failed to allege a "viable" ultra vires claim against the state officials. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) (citation omitted) (state actors retain immunity from claims unless the plaintiff has "pleaded a viable claim"). The state defendants characterize the substance of appellants' claims as ultra vires claims but assert that appellants "failed to identify any ultra vires acts."[10] *See Reconveyance*, 306 S.W.3d at 258–59. Their argument focuses on the merits of appellants' constitutional claims: whether the claims, assuming that they are ultra vires, are "viable." *See Andrade*, 345 S.W.3d at 11.

Although the district court ultimately denied the state defendants' plea to the jurisdiction, the court considered the evidence presented by both sides and determined the merits of competing motions for summary judgment at the same time it considered the state defendants' plea. In this context, we cannot conclude that the court erred by denying the state defendants' plea to the

---

[10] For example, the state defendants argue in their brief:

> [T]he thrust of [appellants'] suit is that the State Officials acted outside their constitutional authority by applying the cosmetology laws to the practice of eyebrow threading. Accordingly, although [appellants] do not themselves invoke the "ultra vires" doctrine explicitly, they in fact assert a [sic] *ultra vires* claims falling squarely within the Supreme Court's holdings in *Heinrich* and *Reconveyance*. (Emphasis in original.)

jurisdiction and determining the merits of appellants' constitutional claims against the state officials by summary judgment. *See Roosters MGC, LLC*, 2010 Tex. App. LEXIS 4392, at *7–8 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)) ("In deciding a plea to the jurisdiction, a court may not weigh the claims' merit beyond the extent necessary to determine jurisdiction, but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry."); *see also Holmes*, 294 S.W.3d at 335 (holding that trial court did not err in denying plea to the jurisdiction and deferring its determination of alleged constitutional violation "until the case could be more fully developed"). We overrule the state defendants' first issue on cross appeal.

### C) *Standing and Ripeness*

In their second and third issues, the state defendants contend that the district court erred in denying the state defendants' plea to the jurisdiction based upon lack of standing and ripeness. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000) (standing and ripeness component parts of subject matter jurisdiction). They contend that Patel and Satani lack standing because they have no injury traceable to the regulation of eyebrow threading that would be redressable by a favorable ruling and that the claims of Patel, Satani, and Chamadia are not ripe. They also contend that the claims of Momin, Yogi, and Rokhti are subject to the redundant remedies doctrine.

### (*i*) *Standing*

"[S]tanding focuses on the issue of *who* may bring an action." *Id.* at 851 (citing *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 626–27 (Tex.

13

1996)) (emphasis in original). "The general test for standing in Texas requires that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (citation omitted). Because appellants seek only declaratory and injunctive relief and they seek the same relief, "only one plaintiff with standing is required." *See Andrade*, 345 S.W.3d at 6 (citing *Barshop*, 925 S.W.2d at 627).

On appeal, the state defendants do not challenge appellant Chamadia's standing to assert appellants' claims for injunctive and declaratory relief, and they did not present evidence to negate her pleaded facts supporting standing. Further, the determination of the declarations sought here resolves appellants' constitutional challenge to the regulation of eyebrow threading. *See Texas Assoc. of Bus.*, 852 S.W.2d at 446. Based upon the pleadings and un-negated facts taken as true, we conclude that Chamadia has established standing. *Id.*; *see also Webb v. Voga*, 316 S.W.3d 809, 812 (Tex. App.—Dallas 2010, no pet.) ("Standing is generally a question of law determined from the pleadings."). Because we conclude that Chamadia has standing, we need not review the standing of Patel and Satani to assert the same claims for declaratory and injunctive relief. *See Andrade*, 345 S.W.3d at 6.

### (ii) Ripeness

Similar to standing, ripeness "emphasizes the need for a concrete injury for a justiciable claim to be presented" but it "focuses on *when* that action may be brought." *Gibson*, 22 S.W.3d at 851 (citation omitted) (emphasis in original). In assessing ripeness, "a court is required 'to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of

14

withholding court consideration.'"  *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  "Hardship is shown when a statute 'requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'"  *Mitz v. Texas State Bd. of Veterinary Med. Exam'rs*, 278 S.W.3d 17, 26 (Tex. App.—Austin 2008, pet. dism'd) (quoting *Abbott Labs*, 387 U.S. at 153).

The state defendants contend that the claims of Patel, Satani, and Chamadia are not ripe because there have been no enforcement actions against them and they have suffered no injury from the challenged regulations.  The pleadings and un-negated facts, however, taken as true show that Chamadia, Patel, and Satani are subject to a continuing threat of civil and criminal liability for the practice of eyebrow threading without a license, as well as administrative penalties and sanctions. *See* Tex. Occ. Code Ann. §§ 51.301–.302 (administrative penalty) (West 2004), 51.352–.353 (West Supp. 2011) (civil penalty and administrative sanctions), 1602.554 (West 2004) (unlicensed practice of cosmetology criminal misdemeanor); *Perry*, 66 S.W.3d at 250; *Mitz*, 278 S.W.3d at 25–26 (holding constitutional claim ripe for review, considering "continuing threat of civil and criminal liability against the practitioners and the direct effect the Act had on their ongoing business enterprise").

As with Chamadia's pleadings concerning her interest in the controversy, Patel and Satani pleaded, and the un-negated facts taken as true show, that they both have interests in eyebrow threading businesses and that the departments' actions threaten them with "punishing administrative fines, civil penalties, and criminal penalties."  Further, appellants challenge the constitutionality of statutes, a challenge that is "is unquestionably an issue fit for judicial review."  *Mitz*, 278 S.W.3d

15

at 23 (citation omitted).  Given appellants' pleadings and the un-negated facts taken as true, Chamadia, Patel, and Satani have shown hardship without judicial consideration and that their issues are fit for judicial review.  *See Perry*, 66 S.W.3d at 250; *Mitz*, 278 S.W.3d at 26.  We conclude then that their claims are ripe.

### (iii)    Redundant Remedies

Under the redundant remedies doctrine, when a statute provides an avenue for attacking a final agency order, a UDJA action generally will not lie to provide a redundant remedy. *See Strayhorn v. Raytheon E-Sys., Inc*., 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied); *Kuntz v. Khan*, No. 03-10-00160-CV, 2011 Tex. App. LEXIS 446, at *11 (Tex. App.—Austin Jan. 21, 2011, no pet.) (mem. op.).  The state defendants contend that the claims of Momin, Yogi, and Rokhti are barred by this doctrine because all of the substantive relief that appellants seek through their UDJA suit could be brought through the administrative process.  *See* Tex. Gov't Code Ann. § 2001.174(2)(A)-(B) (West 2008).

Although administrative actions subject to judicial review are pending against Momin, Yogi, and Rokhti, there is no administrative action pending against Chamadia, and we have concluded that she has standing to assert appellants' claims for declaratory and injunctive relief.  *See Andrade*, 345 S.W.3d at 6.  As we concluded previously as to the standing of Patel and Satani, we need not review the standing of Momin, Yogi, and Rokhti to assert the same claims asserted by Chamadia for declaratory and injunctive relief.  *See id.*  Further, Momin, Yogi, and Rokhti remain subject to civil and criminal liability, in addition to administrative penalties and sanctions.  *See, e.g.*, *Mitz*, 278 S.W.3d at 26 (case ripe for judicial review although administrative proceedings pending

16

because "continuing threat of civil and criminal liability" established hardship without judicial consideration).  Given their continuing exposure to civil and criminal liability and Chamadia's standing to assert appellants' claims, we conclude that the redundant remedies doctrine does not bar the other individual appellants' claims.  *See id.*

Having found standing and that the challenged claims are ripe for judicial review, we overrule the state defendants' second and third issues on cross appeal and turn to appellants' issues.

***Appellants' Issues on Appeal***

Appellants raise four issues challenging the district court's summary judgment rulings.  They contend in their first two issues that (i) the district court erred because it should have applied the "real and substantial" test that governs judicial review of state economic regulations and not the federal "rational basis" test, (ii) the record does not show a substantial relationship between the government's eyebrow threading regulations and the public health and safety, and (iii) the regulations are unduly burdensome.  Appellants contend in their third issue that, even if the federal "rational basis" test controls, the record does not show any rational relationship between the eyebrow threading regulations and legitimate public safety objectives.  In their final issue, they contend that the district court abused its discretion by admitting portions of an affidavit.

*A)      Standards of Review*

We review a trial court's decision to grant or deny summary judgment de novo.
*Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007);
*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins.*

17

*Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661. When the parties file competing motions for summary judgment, and one is granted and one is denied, we review the record, consider all questions presented, and render the decision the trial court should have rendered. *Id.* When the trial court does not specify the grounds for its summary judgment, as is the case here, the appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Knott*, 128 S.W.3d at 216.

> **B)** *Appellants' Constitutional Challenge to Cosmetology Statutes and Rules as applied to Eyebrow Threading*

In their first issue, appellants contend that the standard for reviewing their constitutional challenges brought under article I, section 19 of the Texas Constitution is the "real and substantial" test for challenges to economic regulations.[11] In the context of determining whether a statute is a proper exercise of police power, this Court has stated the test as whether "the statute in

---

[11] Although appellants pleaded separate causes of action based upon substantive due process and the privileges and immunities clause in article I, section 19 of the Texas Constitution, appellants do not make separate arguments in their briefing, and the substance of their claims was the same—that the regulations violated their right to earn an honest living in the occupation of one's choice free from unreasonable governmental interference. We, therefore, do not address the privileges and immunities clause separately but consider it as part of their substantive due process, economic liberty challenge.

question bears a real and substantial relation to the public health, safety, morals, or general welfare *of the public*." *Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 216 (Tex. App.—Austin 2008, no pet.) (emphasis in original). A statute is a proper exercise of police power if it is "appropriate and reasonably necessary to accomplish a purpose within the scope of the police power" and it is "reasonable and not arbitrary or unjust in the manner it seeks to accomplish the goal of the statute or so unduly harsh that it is out of proportion to the end sought to be accomplished." *Id*. at 215 (citation omitted).

The state defendants counter that the proper standard is federal "rational basis" review, the standard that applies to federal due process challenges. *See Garcia*, 893 S.W.2d at 525 (rational basis test discussed); *see also City of San Antonio v. TPLP Office Park Prop.*, 218 S.W.3d 60, 65–66 (Tex. 2007) (applying "rational basis" review to substantive due process challenge to city action and ordinance); *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (explaining that "due course" provision in Texas Constitution lacks "meaningful distinction" from federal "due process"); *Liberty Mut. Ins. Co. v. Texas Dep't of Ins*., 187 S.W.3d 808, 827 (Tex. App.—Austin 2006, pet. denied) (applying federal rational basis review to substantive due process challenges); *Lens Express, Inc. v. Ewald*, 907 S.W.2d 64, 68–69 (Tex. App.—Austin 1995, no writ) (same). "Under federal due process, a law that does not affect fundamental rights or interests—such as the economic legislation at issue here—is valid if it merely

bears a rational relationship to a legitimate state interest." *See Garcia*, 893 S.W.2d at525 (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 491 (1955)).[12]

In *Garcia*, the Texas Supreme Court "recognized that 'Texas courts have not been consistent in articulating the standard of review under the due course clause.'" *Id.* (citation omitted). The court noted that Texas courts "have sometimes indicated that section 19 provides an identical guarantee to its federal due process counterpart" and, "[o]n other occasions, . . . our Court has attempted to articulate our own independent due course standard . . . which some courts have characterized as more rigorous than the federal standard." *Id.*; *see Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 263 & n.5 (Tex. 1994) (noting that Texas courts not consistent in articulating standard of review under due course clause). Because appellants' issues raise substantive due process as well as arguing that the eyebrow threading regulations are not a proper exercise of the state's police power, we consider their arguments under both standards.

---

[12] To bring a substantive due process claim, an individual also must establish a protected interest. *Liberty Mut. Ins. Co. v. Texas Dep't of Ins.*, 187 S.W.3d 808, 827 (Tex. App.—Austin 2006, pet. denied). For purposes of their motion for summary judgment, the state defendants assume that the appellants had a protected, but not fundamental, liberty interest. *See Rylander v. B & A Mktg. Co.*, 997 S.W.2d 326, 333–34 (Tex. App.—Austin 1999, no pet.) (applying rational basis review where fundamental liberty interest not at stake); *Garay v. State*, 940 S.W.2d 211, 218 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (applying rational basis review to substantive due process claim concerning right to seek and obtain employment); *see also Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1148–50 (5th Cir. 1997) (recognizing the right to earn living in the "common occupations of the community" as a protected, but not fundamental, liberty interest and applying rational basis review to substantive due process challenge).

Appellants contend that the cosmetology statutes and rules as applied to eyebrow threading do not pass the real and substantial test because they have no real or substantial connection to stated objectives such as sanitation and health and safety. They argue that the "constitutionally required real and substantial connection is lacking because the government has no evidence that eyebrow threading is dangerous and, even if it did, there is no meaningful connection between the practice of eyebrow threading and the [Department]'s conventional cosmetology regulations." They also argue that the effect of the regulation is unduly harsh in proportion to the stated objections.

Appellants alternatively contend that even if the district court correctly applied the federal "rational basis" test, that it misapplied the test because "there is an irrational disconnect between legitimate concerns for the public's safety and requiring eyebrow threaders to undergo several hundred hours of irrelevant training simply to guarantee perhaps a few dozen hours of sanitation training." They argue that: (i) the regulations "may, in fact, undermine safety by giving consumers a false sense of security in the ability of state-licensed cosmetologists to perform threading," and (ii) the state's cosmetology training program has nothing to do with eyebrow threading and, therefore, that "there is no sense in requiring them to endure it."

Appellants further argue that we must consider and weigh the evidence and that the evidence supports their position that the statutes and rules should be struck down. They point to evidence that they contend supports findings that: (i) eyebrow threading does not require conventional cosmetology training, (ii) it is "safe and requires, at most, minimal sanitation training," (iii) Texas does not require beauty schools to teach eyebrow threading, (iv) a limited number

21

of schools voluntarily teach threading, and (v) Texas does not test threading as a condition of licensure.[13]

The requirements for obtaining and then maintaining a cosmetology license include completing 1500 hours—or 750 hours for a facialist—in a licensed beauty school, passing written and practical examinations, paying biannual fees, and taking continuing education courses. *See* Tex. Occ. Code Ann. §§ 1602.254–.258 (eligibility for licenses), 1603.252–.257 (examination requirements), 1602.351 (minimum curriculum for schools), 1602.451 (West Supp. 2011) (duties of holder of beauty school license); 16 Tex. Admin. Code §§ 83.20(a) (license requirements), 83.25(e) (continuing education), 83.26(a)–(b) (renewal), 83.31(a) (term), 83.80(a)–(b) (fees), 83.120 (curriculum).

Appellants urge that the general sanitation training taught in beauty schools does not justify requiring eyebrow threaders to undergo 750 or 1500 hours of instruction and two examinations. The facial curriculum requires 40 hours out of the 750 hours required for "sanitation, safety, and first aid." *See* 16 Tex. Admin. Code § 83.120. The facial curriculum additionally includes: 225 hours for "facial treatment, cleansing, masking, therapy," 90 hours for "anatomy and

---

[13] The evidence included the Department's discovery responses in which it named schools that provided instruction on the practice of eyebrow threading. Appellants provided affidavits from individuals from some of those schools. Some of the individuals testified that their school did not teach eyebrow threading. Appellants' evidence also included excerpts from cosmetology textbooks addressing eyebrow threading and their expert's testimony. Appellants characterize the references in the textbooks as "cursory," and urge that their expert's testimony shows that eyebrow threading is safe and should not require a cosmetology license. Their expert, who was a physician and operated a medical spa, testified concerning existing medical literature and data from hair removal treatments at her medical spa, including eyebrow threading, waxing, and laser hair removal. There had only been one complication from threading at her medical spa. Her opinion was that the practice of threading only required "a basic sanitation course."

physiology," 75 hours for "electricity, machines, and related equipment," 75 hours for "Makeup," 50 hours for "orientation, rules and laws," 50 hours for "Chemistry," 50 hours for "care of client," 35 hours for "management," 25 hours for "superfluous hair removal," 15 hours for "aroma therapy," 10 hours for "Nutrition," and 10 hours for "color psychology." *See id.* Appellants urge that the training that the Department has imposed "comes with at least 710 hours of unnecessary instruction" and that the "threading regulations place a disproportionate burden on Appellants as compared to the public benefits (if any) of licensing eyebrow threaders as conventional cosmetologists."

### (ii) The State Defendants' Contrary Arguments

On the contrary, the state defendants contend that rational basis review applies to appellants' economic liberty claims brought under the Texas Constitution and that, in any event, the challenged regulations survive under either rational basis or real and substantial review. The state defendants' position is that the practice of eyebrow threading requires, at a minimum, a license for a facialist, and that the application of the licensing requirements for a facialist to eyebrow threading, as well as the other challenged cosmetology regulations, bears a rational relationship to the legitimate state purpose of protecting public health and safety. *See* Tex. Admin. Code §§ 83.10(9) (definition of facialist), 82.120(b) (facial curriculum).[14] They also contend that there is a real and substantial connection between the eyebrow threading regulations and the legitimate concern for public health, safety, and sanitation. They argue that Texas regulates eyebrow threading because cosmetology

---

[14] After September 1, 2011, a license for a facialist is referred to as an esthetician speciality license. *See* Tex. Occ. Code. Ann. § 1602.257 (West Supp. 2011) (amendments effective Sept. 1, 2011).

23

procedures and techniques—including eyebrow threading—performed on the public implicate the transmission of communicable diseases unless safe and sanitary practices are followed and that a primary basis for regulating cosmetology services—including eyebrow threading—is due to the risk of contamination and spread of disease inherent in providing such services to the public.

The state defendants focus on sections of the cosmetology statutes and rules that specifically address public health, safety, and sanitation concerns. *See, e.g.*, Tex. Occ. Code Ann. §§ 1603.102 (West Supp. 2011) (Commission required to "establish sanitation rules to prevent the spread of an infectious or contagious disease"), 1603.352 (West Supp. 2011) (imposing sterilization requirements for certain cosmetology services), 1602.406 (West 2004) (practice of cosmetology forbidden by any licensed person who knows they are suffering from infectious or contagious disease), 1603.455 (West Supp. 2011) (Department authorized to issue emergency orders "to protect the public health and safety"); *see generally* 16 Tex. Admin. Code §§ 83.100–.111; *see id.* §§ 83.100 (health and safety definitions), 83.102 (general health and safety standards), 83.104 (health and safety standards for facial services), 83.111 (health and safety standards related to blood and bodily fluids).

The state defendants also dispute appellants' characterization of the testing and teaching of eyebrow threading by Texas beauty schools and in the textbooks. They presented conflicting evidence concerning the cost and extent that beauty schools teach and test threading and health, safety, and sanitation and the topics covered by the licensing examinations. The evidence included excerpts from textbooks, actual test questions from the licensing examinations, candidate information bulletins that advise candidates of the subjects covered on the examinations, and an

24

affidavit by Marinela LaFleur, a program specialist in the education and examination division from the Department. The excerpts from the textbooks cover, among other topics, hair removal including threading, disorders and diseases, sanitation, bacteria, viruses, infection control, and first aid. The subject areas covered by the test questions and the candidate information bulletin include sanitation and safety concerns, as well as hair removal.[15]

In her affidavit, LaFleur testified concerning the facial curriculum and the topics covered on the licensing examinations in relevant part:

> The facial curriculum, which requires 25 hours of instruction in superfluous hair removal, does not specify the types of hair removal that beauty schools must teach. Schools may elect to teach waxing, threading or other hair removal techniques in response to student demand. . . .
>
> With regard to the current facialist exam in particular, 24 percent of the written exam (22 questions out of 90) directly addresses sanitation, disinfection, and safety. In addition, these matters are also addressed as part of the client consultation and analysis component (e.g. human physiology, anatomy, and disorders), which constitutes 12 percent (11 questions) of the exam. Hair removal, including eyebrow threading as a form of tweezing, comprises another 11 percent (10 questions) of the exam. A candidate's eyebrow threading technique and hands-on compliance with the related sanitation requirements are tested during all three phases of the practical examination—pre-service, during service, and post-service. During each of these phases, the applicant is assigned points for successfully performing eyebrow threading technique and/or adhering to all of the safety criteria that are part of each phase of a proper eyebrow tweezing.

She also listed textbooks that are currently used in beauty schools "which represent accepted Cosmetology standards."

---

[15] The district court admitted the test questions under seal.

The state defendants also rely upon appellants' expert to support their position that the challenged regulations meet either test. In the report that was attached to her affidavit, appellants' expert listed diseases that can be spread through the threading process and articles reflecting medical risks of threading and the need for sanitation to minimize the risks. She stated in part:

> The sanitation risk of any form of hair removal technique, including eyebrow threading, could result in viral and superficial bacterial infections. . . .
>
> The complications mentioned can occur with waxing or tweezing since the listed complications are due to the "trauma" of the procedure rather than just threading. It is the act of having the skin abraded that causes the complication of redness, swelling, itching, inflammation of the hair follicles, discoloration, and the superficial bacterial and viral infections. Thus, all forms of avulsive (pulling) like hair removal can have these complications. . . .

Her report also listed specific forms of bacteria and viruses that are contagious and that can be spread during the threading process.

### (iii)     Analysis of Appellants' Constitutional Challenge

Because the district court granted summary judgment in favor of the state defendants, the issue on appeal is whether the state defendants established that they were entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Grant*, 73 S.W.3d at 215. We, therefore, consider the evidence in the light most favorable to appellants. We also presume, however, that the challenged regulations are constitutional, and appellants, as the parties challenging the constitutionality of the regulations, bear the burden to demonstrate that the regulations fail to satisfy constitutional

requirements.  *Satterfield*, 268 S.W.3d at 201 (citing *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex. 1996) and *Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex. 1989)).

Appellants presented evidence that eyebrow threading is safe but whether it generally is safe is not determinative here.  Appellants do not dispute that a primary purpose of the cosmetology regulations is to protect public health, safety, and sanitation.  They also do not dispute that eyebrow threading is subject to regulation as a cosmetology service.[16]  Because the challenged regulations address an occupation and are related to public health and safety, they are squarely within the scope of the state's police power.  *See Satterfield,* 268 S.W.3d at 217 (regulation of occupations and professions and regulations concerning public health and safety within the scope and proper exercise of police power); *see also Texas State Bd. of Barber Exam'rs v. Beaumont Barber College, Inc.*, 454 S.W.2d 729, 731 (Tex. 1970) (regulation of barber trade necessary to public health and proper exercise of police power).

The Texas Supreme Court has explained the courts' role when reviewing statutes that are within the scope of the police power:

---

[16]  For example, appellants state in their brief:

> Appellant acknowledge that the government can constitutionally regulate the basic sanitation aspects of eyebrow threading, but they vigorously challenge the notion that they can do so using *this* regulatory regime.

They compare eyebrow threaders to hair braiders who are required to complete 35 hours of training and are eligible for a speciality certificate.  *See* Tex. Occ. Code Ann. § 1602.258 (West Supp. 2011) (requisites for speciality certificate eligibility determined by Department); 16 Tex. Admin. Code §§ 83.20(b) (requirements for hair braiding speciality certificate), 83.120(b) (hair braiding curriculum).

27

> A large discretion is necessarily vested in the Legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. If there is room for a fair difference of opinion as to the necessity and reasonableness of a legislative enactment on a subject which lies within the domain of the police power, the courts will not hold it void.

*State v. Richards*, 301 S.W.2d 597, 602 (Tex. 1957). In *Richards*, the supreme court found that the innocent-owner provision of a civil asset forfeiture statute as applied to the property rights of the innocent owner was within the scope of the state's police power and upheld it against a state substantive due process challenge. *See id.* at 602–03; *cf. Satterfield*, 268 S.W.3d at 220 (holding that statute that limited asbestos-related liabilities of certain successor corporations not within police power).

Similarly, in the context of a challenge to state regulation of visual care and related licensing requirements, the United States Supreme Court found that the challenged statutes that subjected opticians to the regulatory system at issue did not violate the constitution. *Williamson*, 348 U.S. at 491 ("We cannot say that the regulation has no rational relation to that objective [professional treatment of human eye] and therefore is beyond constitutional bounds."). In reaching its holding, the court observed:

> The [challenged state] law may exact a needless, wasteful requirement in many cases. But it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement. . . . [T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.
>
> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial

conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.

*Id.* at 487–88 (citation omitted); *see also City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1974) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations.").[17]

Applying these directives for reviewing regulations that are within the scope of the police power here, we conclude that, under either the real and substantial test or rational basis review, the state defendants established that they were entitled to summary judgment as a matter of law. *See Texas State Bd. of Barber Exam'rs*, 454 S.W.2d at 732 (citation omitted) ("The necessity or reasonableness of particular regulations imposed under the police power is a matter addressed to the legislative department whose determination in the exercise of a sound discretion is conclusive upon the courts. Legislative enactments will not be held unconstitutional and invalid unless it is absolutely necessary to so hold."). Viewing the evidence in the light most favorable to appellants, the evidence at most established that there is "room for a fair difference of opinion as to the necessity and reasonableness" of the challenged regulations. *See Richards*, 301 S.W.2d at 602; *see also FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 175 (5th Cir. 1996) (where the question of

---

[17] *See* Anthony B. Sanders, *The "New Judicial Federalism" before its time: A Comprehensive Review of Economic Substantive Due Process Under State Constitutional Law Since 1940 and the Reasons for Its Recent Decline*, 55 Am. U. L. Rev. 457, 475, 478 (2005) (noting that United States Supreme Court has not invalidated an economic regulation on economic substantive due process grounds since 1937 and that "by the 1980s only a handful of states invalidated economic regulations on substantive due process grounds, and then, only on occasion").

whether there is a rational relationship between policy and legitimate objective is "debatable," no substantive due process violation).

In *Garcia*, the supreme court found that under "any articulation," the statute at issue was "sufficiently rational and reasonable to meet constitutional due course requirements." *See* 893 S.W.2d at 525; *see also Trinity River Auth.*, 889 S.W.2d at 263 (noting standard of review under due course clause not consistently articulated and holding that "under any cognizable test" statute at issue "passes constitutional muster"). Similarly, on the record before us, we conclude that the challenged regulations are "sufficiently rational and reasonable to meet constitutional due course requirements." *See id.*

### *(iv)* *Craigmiles and Cornwell*

As part of their third issue, appellants rely on two federal court decisions to support their position that, even under the rational basis test, the regulatory licensing scheme as applied to eyebrow threading violates their substantive due process rights. *See Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999). We find both cases distinguishable.

In *Craigmiles*, the plaintiffs challenged an amendment to a statute that precluded the selling of caskets without a "funeral director" license from the state. 312 F.3d at 222. In that case, the evidence showed that licensed funeral directors sold the caskets at prices substantially over total costs. *Id.* at 224. Applying rational basis review, the Sixth Circuit held that the amendment violated both the due process and equal protection clauses of the Fourteenth Amendment, "[f]inding no rational relationship to any of the articulated purposes of the state" and that the amendment was

30

"nothing more than an attempt to prevent economic competition." *Id*. at 225, 228; *see also* U.S. Const. amend. XIV, § 1. Given the "pretextual nature of the state's offered explanations," the court invalidated the "naked attempt to raise a fortress protecting the monopoly rents that funeral directors extract from consumers." 312 F.3d at 229. Here, in contrast with the challenged amendment in *Craigmiles*, there was no evidence to support a finding that the purpose of the regulation of the practices of cosmetology, including eyebrow threading, was economic protection or to prevent economic competition.

In *Cornwell*, the plaintiffs brought substantive due process and equal protection claims challenging California cosmetology regulations as applied to African hair braiding. 80 F. Supp. 2d at 1102–03. The plaintiffs' equal protection claim was "grounded on the reasoning that 'sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike.'" *Id*. (citation omitted). Plaintiffs also alleged that the "current cosmetology regulatory regime has the intent and effect of establishing and maintaining a cartel for cosmetology services in California." *Id*. at 1113, 1117–18. Facing motions for summary judgment and applying rational basis review, the California district court granted summary judgment for one of the plaintiffs and denied it as to the other plaintiffs. The court concluded as to the successful plaintiff, who only "locks" hair, that "her activities were of such a distinguishable nature" that she could not be reasonably classified as "a cosmetologist as it is defined and regulated presently" and that, even if she were defined as a cosmetologist, "the licensing regime would be irrational as applied to her because of her limited range of activities." *Id*. at 1107–08. The court noted that the successful

plaintiff's task was limited to the "physical manipulation of hair without the use of hazardous chemicals." *Id*. at 1118.

The factors considered by the court to reach its finding that the regulations were not rational as applied to the successful plaintiff included the mandated curriculum of 1600 hours, the exposure of hair braiders to hazardous chemicals that they do not use in their trade, and the lack of hair braiding teaching in the mandated curriculum. Although appellants make analogous arguments here concerning the curriculum and licensing requirements, they did not seek a declaration that eyebrow threading fell outside the definition of cosmetology, they did not bring an equal protection claim, and they did not allege monopoly or other improper reasons behind the challenged regulations. We further cannot conclude that hair braiding and eyebrow threading fall within the same type of cosmetology services. *See* Tex. Occ. Code Ann. § 1602.258 (West Supp. 2011) (requisites for speciality certificate eligibility determined by Department); 16 Tex. Admin. Code §§ 83.20(b) (requirements for hair braiding speciality certificate), 83.120(b) (hair braiding curriculum different from other cosmetology services).

### (v)    Conclusion

Because we conclude that the state defendants established as a matter of law that the challenged cosmetology statutes and rules as applied to the practice of eyebrow threading do not violate appellants' economic liberties under article I, section 19 of the Texas Constitution, we conclude that the district court did not err in granting summary judgment in favor of the state defendants. We overrule appellants' first, second, and third issues.

*C)      Challenge to Admission of Portion of LaFleur's Affidavit*

In their final issue, appellants contend that the district court abused its discretion by admitting portions of the affidavit of Marinela LaFleur concerning the number of hours of training taught at licensed beauty schools devoted to general sanitation. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam) (standard of review of a trial court's decision to admit or exclude evidence is abuse of discretion). Appellants objected to this portion of her testimony as conclusory. *See, e.g.*, *HIS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 803 (Tex. 2004) (conclusory statements in expert affidavit "insufficient to create a question of fact to defeat summary judgment").

A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Additionally, to be entitled to reversal due to the erroneous admission of evidence, an appellant must show that the error probably resulted in an improper judgment. Tex. R. App. P. 44.1; *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). In conducting a harm analysis, we review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *In re C.R.*, 263 S.W.3d 368, 370 (Tex. App.—Dallas 2008, no pet.).

In her affidavit, LaFleur testified that she was employed by the Department as a program specialist in the education and examination division, that she had been in that position for

33

four years, that she was "familiar with and [had] knowledge of the curriculum for the cosmetology operator and facialist license examination and the Candidate Information Bulletins (CIBs) that TDLR publishes for the benefit of licensure candidates," and that she was "a licensed cosmetology operator and a licensed cosmetology instructor."

Appellants objected to the following paragraph in LaFleur's affidavit on the ground that it was improper conclusory testimony that 430 hours are devoted to general sanitation training:

> The curriculum required to be taught in licensed beauty schools is listed in 16 TAC § 83.120(a) (operator curriculum - 1500 hours) and § 83.120(b) (facial curriculum -750 hours). The curriculum covers extensive sanitation requirements found under the following topics and hours: facial treatment, cleansing, masking, therapy (225 hours), anatomy and physiology (90 hours), orientation, rules and law (50 hours), sanitation, safety and first aid (40 hours), superfluous hair removal (25 hours). Sanitation in the practice of cosmetology services is a serious public health and safety concern, and therefore it is covered as a component of teaching virtually every cosmetology technique.

Appellants point to the curriculum guidelines for the facial curriculum in the rules that set 40 hours for "sanitation, safety, and first aid," *see* Tex. Admin. Code § 83.120(b), to argue that LaFleur failed to provide a "means of testing her proposition that sanitation training is sprinkled across 430 hours of the cosmetology curriculum."

We cannot conclude that the district court abused its discretion by overruling appellants' objection and admitting this paragraph. See *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. The topics and hours as attested to by LaFleur track the topics and hours set forth in the rules for the facial curriculum. Further, appellants have failed to show that the judgment turned on the admission of this paragraph. *See* Tex. R. App. P. 44.1; *Central Expressway Sign Assocs.*, 302 S.W.3d at 870.

34

The evidence was extensive concerning the curriculum covered by beauty schools in Texas, and the record makes clear that sanitation was part of the curriculum. The actual number of hours devoted to sanitation is not controlling here. We overrule appellants' fourth issue.

## CONCLUSION

For these reasons, we affirm the district court's judgment.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   July 25, 2012